WHITE AND WILLIAMS LLP
Amy E. Vulpio, Esq.
James C. Vandermark, Esq.
7 Times Square, Suite 2900
New York, NY 10036
(212) 244-9500
vulpioa@whiteandwilliams.com
vandermarkj@whiteandwilliams.com

*Counsel to Heidi J. Sorvino, Esq.,*
 *as the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>60 91st Street Corp.,<br>     Debtor. | Chapter 11<br><br>Case No. 20-10338 (SCC) |
| HEIDI J. SORVINO, as the duly appointed chapter 11 trustee for the estate of 60 91st Street Corp.,<br><br>     Plaintiff,<br><br>v.<br><br>2386 HEMPSTEAD, INC.,<br><br>     Defendant. | Adv. Proc. |

## COMPLAINT FOR A DECLARATORY JUDGMENT, TO AVOID AND RECOVER TRANSFERS, AND TO DISALLOW CLAIMS

Heidi J. Sorvino (the "**Chapter 11 Trustee**"), as the duly appointed chapter 11 trustee for

the estate of 60 91st Street Corp. (the "**Debtor**"), brings this complaint (the "**Complaint**") against

2386 Hempstead, Inc. (the "**Lender**") and alleges[1] as follows:

---

[1] The allegations in this Complaint are based upon the Chapter 11 Trustee's information and belief, obtained, without limitation, from a review of documentation and information obtained by the Chapter 11 Trustee and her professionals during the course of their investigatory work in the Debtor's chapter 11

## NATURE OF THE CASE

1.     By the instant adversary proceeding, the Chapter 11 Trustees seeks a declaratory judgment against the Lender declaring the Loan Documents (as defined below) and the Foreclosure Judgment (as defined below) are void under New York law, as they were impermissibly entered into by the Lender and Kim Mortimer, on behalf of the Debtor, after the Debtor was dissolved by the State of New York.

2.     The Chapter 11 Trustee further seeks to avoid and recover from the Lender, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy case of the Debtor (the "**Preference Period**") pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), including any judgement entered in favor of the Lender and against the Debtor during the Preference Period.

3.     Subject to proof, the Chapter 11 Trustee also seeks to avoid and recover from the Lender, or any other person or entity for whose benefit transfers were made, any transfers that may have been fraudulent conveyances, pursuant to sections 548 and 550 of the Bankruptcy Code as well as sections 273-279 of the New York Debtor & Creditor Law (the "**DCL**").

4.     In addition, the Chapter 11 Trustee seeks to disallow, pursuant to sections 502(a), (b), (d), and (j) of the Bankruptcy Code, any claim that the Lender has filed or asserted against the Debtor or that has been scheduled for the Lender.

## JURISDICTION AND VENUE

5.     The United States Bankruptcy Court for the Southern District of New York (the "**Court**"), has subject matter jurisdiction over this adversary proceeding, which arises under title

---

case, from a review of other publicly available documentation and information, and from information

11, arises in, and relates to a case under title 11, pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Debtor's chapter 11 case and this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      This adversary proceeding is a core proceeding to be heard and determined by the Court under 28 U.S.C. § 157(b)(2).  The Chapter 11 Trustee consents to entry of final orders and judgment by the Court.

7.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code, Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), sections 273-279 of the DCL, sections 1005 and 1006 of NY Business Corporation Law, and section 203-1 of the New York Tax Law.

## II.      PARTIES

8.      The Debtor is a New York domestic business corporation, incorporated under the laws of New York, and is the owner of the real property located at 60 West 91st Street, New York, NY 10024 (the "**Property**").

9.      The Chapter 11 Trustee is the duly appointed chapter 11 trustee for the Debtor's bankruptcy estate and has standing to purse this action.

10.      Upon information and belief, the Lender was, at all relevant times, a New York domestic business corporation, incorporated under the laws of New York.  Upon further information and belief, at all relevant times, the Lender's principal place of business was located at 47 Glen Cove Rd., Greenvale, New York, 11548.

## FACTUAL BACKGROUND

**Pre-Petition Background**

provided parties in interest in the Debtor's chapter 11 case.

11.     Prior to September 26, 1994, Arthur and Anne Sowell (who, upon information and belief, were Kim Mortimer's maternal grandparents) owned the Property as tenants in common.

12.     On or about August 29, 1994, the Debtor was organized as a New York domestic business corporation pursuant to a Certificate of Incorporation filed with the Department of State for the State of New York (the "**NY DOS**").

13.     After the Debtor was incorporated, the Debtor received ownership of the Property as the result of two transfers: (1) the first transfer occurred on or about September 26, 1994, when Anne Sowell transferred her one-half interest in the Property to the Debtor (the "**1994 Transfer**"), and (2) the second transfer occurred on or about February 18, 2011, when Arthur Sowell's one-half interest in the Property was transferred to the Debtor by Yvonne Sowell (a/k/a Yvonne Mortimer) as the sole heir-at-law of Arthur Sowell (the "**2011 Transfer**").

14.     On or about July 29, 2009 (the "**Dissolution Date**"), the Debtor was dissolved, pursuant to section 203-a of the New York Tax Laws, by the proclamation of the Secretary of State for the State of New York published on July 29, 2009.

15.     Upon information and belief, Kim Mortimer was, at all relevant times, operating the Debtor's business and managing the Debtor's affairs, which includes all times after the Dissolution Date and until the appointment of the Chapter 11 Trustee.

16.     Upon information and belief, in 2015, Kim Mortimer began to operate and manage the renting of apartment units at the Property through a new corporation, 60 91st Street Corporation (the "**New Corp**").  Upon further information and belief, Kim Mortimer caused a Certification of Incorporation to be filed with the NY DOS on or about August 24, 2015, which effectuated the formal creation of New Corp.

17.    Upon further information and belief, following the creation of New Corp, Kim Mortimer operated the business of renting the apartment units at the Property through New Corp, including entering into leases in the name of New Corp, and also ceased filing tax returns for the Debtor and reported all income derived from the Property as income on the tax returns filed for New Corp.

18.    After the Dissolution Date, and despite the fact that the Debtor was dissolved, the Lender and Kim Mortimer, purportedly on behalf of the Debtor, executed the following Loan Documents:

a.  upon information and belief, a promissory note dated August 13, 2015 (the "**First Note**"), which purports to obligate the Debtor to repay the Lender the sum of $1,400,000.00 (the "**First Loan**");

b.  a mortgage purporting to secure the obligations under the First Note, dated August 13, 2015, which was recorded with Office of the City Register of the City of New York at CRFN 2015000301919 (the "**First Mortgage**");

c.  upon information and belief, a promissory note dated October 3, 2016 (the "**Second Note**"), which purports to obligate the Debtor to repay the Lender the sum of $300,000 (the "**Second Loan**");

d.  a mortgage purporting to secure the obligations under the Second Note, dated October 3, 2016, which was recorded with Office of the City Register of the City of New York at CRFN 2016000435774 (the "**Second Mortgage**");

e.  an agreement entitled Consolidation, Extension and Modification Agreement dated October 3, 2016, (the "**CEMA**"), which purports to consolidate the obligations under the First and Second Loans;

f.  a consolidated note dated October 3, 2016, (the "**Consolidated Note**") purporting to consolidate the First and Second Notes into one note; and

g.  a mortgage dated October 3, 2016 and recorded in the Office of the City Register of the City of New York at CRFN 2016000435774 (the "**Last Mortgage**"), which purports to secure the obligations under a "note signed by the [Debtor] and dated September 2016", which is a note unknown to the Chapter 11 Trustee (the "**September 2016 Note**").

A true and correct copy of the Consolidated Note and Last Mortgage are attached hereto as **Exhibits A and B**, respectively, and incorporated herein as if set forth at length.

19.    Pursuant to the Consolidated Note, Kim Mortimer purportedly obligated the Debtor to pay the Lender $1,700,000, plus interest, on or before October 3, 2017 (the "**Maturity Date**").

20.    Upon information and belief, the Debtor failed to pay the Lender the amounts owed under the Consolidated Note by the Maturity Date (the "**Loan Default**").

21.    On November 16, 2017, approximately one (1) month after the Maturity Date and Loan Default, the Lender commenced a foreclosure action against the Debtor by causing a Verified Complaint Mortgage Foreclosure (the "**Foreclosure Complaint**") to be filed with the Supreme Court of the State of New York in the County of New York (the "**State Court**"), which was assigned index no. 850274/2017 (the "**Foreclosure Action**").  A true and correct copy of the Foreclosure Complaint is attached hereto as **Exhibit C** and incorporated herein as if set forth at length.

22.    On December 9, 2019, the State Court entered a Decision + Order on Motion, Judgment of Foreclosure and Sale (the "**Foreclosure Judgment**") which provided for a sale of the Property and payment of the following amounts to the Lender:

a.  $2,691,415.40 with interest at the note rate from April 30, 2019 until entry of judgment, together with any advances as provided for in the note and mortgage which [the Lender] had made for taxes, insurance, principal, and interest and any other charges due to prior mortgages or to maintain the property pending consummation of the foreclosure sale, not included in the computation upon presentation of receipt for said expenditure to the Referee, and then with interest from the date of entry of this judgment at the statutory rate until the date the deed is transferred

b.  $1,590.00 for costs and disbursements in this action with interest at the statutory judgment rate from the date of entry of this judgment; and

      c.   $20,000 for reasonable attorneys' fees with interest at the statutory judgment rate from the date of entry of this judgment.

A true and correct copy of the Foreclosure Judgment is attached hereto as **Exhibit D** and incorporated herein as if set forth at length.

23.      The Foreclosure Judgment does not reference either the Consolidated Note or the September 2016 Note or otherwise identify the applicable note for determining the amount of any additional interest or advances the Lender may be entitled to under the Foreclosure Judgement.

24.      On December 20, 2019, the Debtor filed a Notice of Appeal with the State Court challenging "each and every part" of the Foreclosure Judgment.   A true and correct copy of the Notice of Appeal is attached hereto as **Exhibit E** and incorporated herein as if set forth at length.

**Post-Petition Background**

25.      On February 4, 2020 (the "**Petition Date**"), Kim Mortimer, who alleges that she is the sole shareholder of the Debtor, filed a voluntary petition (the "**Petition**") on behalf of the Debtor for relief under chapter 11 of the Bankruptcy Code with the Court.

26.      On February 27, 2020, the Lender filed a proof of claim [Claim No. 2-1] (the "**Lender's POC**") to assert a secured claim of $3,016,316.05.  The Lender's POC includes a copy of the Foreclosure Judgment, the Consolidated Note, and the Last Mortgage; however, it does not include a copy of the September 2016 Note.

27.      On April 30, 2020, the Court entered the *Order Approving the Appointment of the Chapter 11 Trustee* [Doc. No. 28] approving the appointment of Ms. Sorvino as the Chapter 11 Trustee in the Debtor's bankruptcy case.

28.      On August 7, 2020, the Chapter 11 Trustee filed the *Motion of Heidi J. Sorvino, as the Chapter 11 Trustee for (I) an Order (A) Establishing Bidding Procedures, Terms and*

*Conditions for the Sale of Substantially All of the Debtor's Assets; (B) Approving Bid*

*Protections; (C) Approving the Form and Manner of the Sale; and (D) Scheduling an Auction*

*and Hearing to Consider the Approval of the Sale of Substantially All of the Debtor's Assets; (II)*

*an Order Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims and*

*Encumbrances; and (III) Granting Related Relief* [ECF No. 134] (the "**Bidding Procedures**

**Motion**").  The Bidding Procedures Motions proposed certain requirements, procedures, and

deadlines (the "**Sale Procedures**") for a potential auction and sale of substantially all of the

Debtor's assets, including the Property (the "**Sale**").

29.     In preparation for a hearing on the Bidding Procedures Motion, counsel to the

Chapter 11 Trustee engaged Riverside Abstract LLC (the "**Title Company**") to examine the title

to the Property and prepare a preliminary certificate of title (the "**Preliminary Report**"), which

reflects the dissolution of the Debtor as of the Dissolution Date.  A copy of the Preliminary

Report is attached hereto as **Exhibit F** and incorporated herein as if set forth at length.

30.     The Title Company advised the Chapter 11 Trustee that it would not be able to

issue title insurance for the conveyance of the Property, as a whole, due to the Dissolution of the

Debtor prior to the 2011 Transfer.

31.     On September 14, 2020, the Chapter 11 Trustee filed the *Motion of Heidi J.*

*Sorvino, as the Chapter 11 Trustee, Pursuant to 11 U.S.C. §§ 105, 363 and 541, for an Order (I)*

*Deeming Debtor a De Facto Corporation and (II) Finding Certain Real Property to be Property*

*of the Debtor's Estate* [ECF No. 154] (the "**Title Motion**") requesting the Court find the

Property to be part of the Debtor's estate.

32.     On September 29, 2020, the Court enter the *Order Granting Motion of Heidi J.*

*Sorvino, as the Chapter 11 Trustee, Pursuant to 11 U.S.C. §§ 105, 363, and 541, for an Order (I)*

*Deeming Debtor a De Facto Corporation and (II) Finding Certain Real Property to be Property of the Debtor's Estate* [ECF No. 171] (the "**Title Order**"), which held that the Debtor was vested with title to the Property and that the Property, in its entirety, was part of the Debtor's estate.

33.     The Title Order did not address the Loan Documents, the Foreclosure Judgment, or any other lien, claim or interest in the Property that is alleged by the Lender.

## CLAIMS AND CAUSES OF ACTIONS

### Count I
**(Declaratory Judgment Finding the Lender's Claims are Void)**

34.     The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

35.     Pursuant to section 203-a of the New York Tax Law, a corporation may be involuntarily dissolved by proclamation of the New York Secretary of State for failure to file reports or pay taxes.

36.     After a corporation is dissolved, it is prohibited from carrying on new business because the corporation's legal existence terminates, except for a limited *de jure* existences solely for the purpose of winding up its affairs. *80-02 Leasehold, LLC v. CM Realty Holdings Corp.*, 123 A.D.3d 872, 874 (NY App. Div. 2d Dept. 2014); *Moran Enters., Inc. v. Hurst*, 66 A.D.3d 972, 975 (NY App. Div. 2d Dept. 2009) (*citing* Business Corporation Law § 1005(a)(1)).

37.     Pursuant to Section 1005(a)(2) of the NY Business Corporation Law, "winding up" means "the performance of acts directed toward the liquidation of the corporation, including the collection and sale of corporate assets." *172 E. 122 St. Tenants Ass'n v. Schwarz*, 73 N.Y.2d 340, 349 (1989) (citation omitted).

38.     Moreover, only the claims and remedies available prior to the dissolution of a corporation are preserved; therefore, claims arising after the company is dissolved, and any

judgment based on such a claim, are null and void. *See* NY Business Corporation Law §

1006(b); *see also Bayer v. Sarot*, 51 A.D.2d 366, 368 (NY App. Div. 1st Dept. 1976) ("all

persons who had contracted or done business with the dissolved corporation are charged with

knowledge of the statutes governing the termination of its corporate existence upon dissolution,

and of the statutes governing its liquidation, and are bound thereby.").

39.     The Debtor was dissolved and its legal existence terminated as of the Dissolution

Date.

40.     Kim Mortimer's execution of the Loan Documents, on behalf of the Debtor, were

not in the furtherance of the winding up of the Debtor and thus, constitutes impermissible new

business.

41.     Actions taken by the Debtor in violation of Section 1005 of the NY Business

Corporation Law are void, including the execution of the Loan Documents and entry of the

Foreclosure Judgment.

42.     The Lender is a sophisticated party, charged with the knowledge of the Debtor's

dissolution and the laws governing that dissolution, and had the means to determine the status of

the Debtor's corporate existences prior to entering into the Loan Documents.

43.     Despite the foregoing, the Lender, in its business judgment, chose to proceed with

the execution of the Loan Documents.

44.     As the Loan Documents and the Foreclosure Judgment are based on claims arising

from after the Dissolution Date, they are void.   The Lender may have recourse against Kim

Mortimer for claims arising from the Loan Documents, but not against the Debtor or the Debtor's

estate. *See 80-02 Leasehold, LLC*, 123 A.D.3d at 874 ("A person who purports to act on behalf

of a dissolved corporation is personally responsible for the obligations incurred") (citations omitted).

45.     Pursuant to sections 1005 and 1006 of the NY Business Corporation Law, the Lender impermissibly encumbered the Debtor's property by obtaining the Loan Documents and Foreclosure Judgment following the dissolution of the Debtor; therefore, the Chapter 11 Trustee is entitled to a judgment declaring: (a) the Loan Documents are void, (b) the Foreclosure Judgment is void, and (c) requiring the Lender to take such steps as necessary for the public records to reflect that the Loan Documents and Foreclosure Judgment are void.

<u>**Count II**</u>
**(Avoidance of Preference Period Transfers - 11 U.S.C. § 547)**

46.     The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

47.     During the Preference Period, the Lender received transfers (the "**Transfers**") from the Debtor that were to or for the benefit of the Lender, including the transfer effectuated by the Foreclosure Judgment.

48.     Each Transfer constituted transfers of an interest in the Debtor's property to or for the benefit of the Lender.

49.     The Lender was a creditor of the Debtor at the time of each Transfer by virtue of the Loan Documents and the Debtor's purported obligation to pay claims arising thereunder.

50.     Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to the Lender.

51.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to the Lender before such Transfers were made, as asserted by the Lender and memorialized in the Loan Documents, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of the Lender prior to the Transfers.

52.     Each Transfer was made while the Debtor was insolvent.  The Chapter 11 Trustee is entitled to the presumption of the Debtor's insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

53.     Each Transfer was made during the Preference Period.

54.     As a result of each Transfer, the Lender received more than the Lender would have received if: (i) the Debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) the Lender received payments of its debts under the provisions of the Bankruptcy Code.  As evidenced by the Debtor's schedules filed in the underlying bankruptcy case as well as the proofs of claims that have been received to date, the Debtor's liabilities exceed its assets such that the Debtor's unsecured creditors will not receive payment of their claims in full from the Debtor's bankruptcy estate.

55.     In accordance with the foregoing, each Transfer, including the Foreclosure Judgment, is avoidable pursuant to 547(b) of the Bankruptcy Code.

56.     Pursuant to sections 547(b) and 550 of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment: (a) avoiding the Transfers, (b) directing the Transfers be set

aside, and (c) requiring the Lender, as the recipient of the Transfers, to take such steps as necessary to set aside the Transfers.

### Count III
### (Avoidance of Constructive Fraudulent Conveyances - 11 U.S.C. § 548)

57. The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

58. During the two years prior to the Petition Date, the Lender received transfers (the "**Potentially Fraudulent Transfers**") from the Debtor that were to or for the benefit of the Lender, including the transfer effectuated by the Foreclosure Judgment, the Chapter 11 Trustee pleads that the Debtor did not receive reasonably equivalent value in exchange for the Potentially Fraudulent Transfers; and

   a. the Debtor was insolvent as of the date of the Potentially Fraudulent Transfer(s), or became insolvent as a result of the Potentially Fraudulent Transfer(s); or

   b. the Debtor was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor or for whose benefit the Potentially Fraudulent Transfer(s) was made was unreasonably small capital; or

   c. the Debtor intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

59. Each of the Potentially Fraudulent Transfers constituted a transfer of an interest of the Debtor in property.

60. At the time of each Potentially Fraudulent Transfer, the Lender knew or should have known that the Debtor was a dissolved corporation and incapable of entering into the Loan Documents. Thus, the Lender received each of the Potentially Fraudulent Transfers without good

faith and with the knowledge of their avoidability. Accordingly, the Lender is not entitled to a replacement lien pursuant to section 548(c) of the Bankruptcy Code.

61. Pursuant to sections 548(a)(1)(B) and 550 of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment: (a) avoiding the Potentially Fraudulent Transfers, (b) directing the Potentially Fraudulent Transfers be set aside, (c) requiring the Lender, as the recipient of the Potentially Fraudulent Transfers, to take such steps as necessary to set aside the Potentially Fraudulent Transfers, and (d) denying the Lender a replacement lien pursuant to section 548(c) of the Bankruptcy Code.

## Count IV
### (Avoidance of Actual Fraudulent Conveyances - 11 U.S.C. § 548)

62. The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

63. The Potentially Fraudulent Transfers received by the Lender constituted transfers of an interest of the Debtor's property.

64. The Potentially Fraudulent Transfers were made within two (2) years of the Petition Date.

65. The Potentially Fraudulent Transfers were made with the actual intent to hinder, delay, or defraud entities to which the Debtor was or became indebted to on or after the date of the Potentially Fraudulent Transfers.

66. At the time of each Potentially Fraudulent Transfer, the Lender knew or should have known that the Debtor was dissolved and the Loan Documents and Foreclosure Action were legally impermissible. Thus, the Lender received the Potentially Fraudulent Transfers without good faith and with the knowledge of their avoidability. Accordingly, the Lender is not entitled to a replacement lien pursuant to section 548(c) of the Bankruptcy Code.

67. Pursuant to sections 548(a)(1)(A) and 550, the Chapter 11 Trustee is entitled to a judgment: (a) avoiding the Potentially Fraudulent Transfers, (b) directing the Potentially Fraudulent Transfers be set aside, (c) requiring the Lender, as the recipient of the Potentially Fraudulent Transfers, to take such steps as necessary to set aside the Potentially Fraudulent Transfers, and (d) denying the Lender a replacement lien pursuant to section 548(c) of the Bankruptcy Code.

## Count V
### (Avoidance of Fraudulent Conveyances - New York Law, DCL §§ 276, 276-a, 278, 279)

68. The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

69. The First, Second, and Last Mortgage constituted transfers (the "**Mortgage Transfers**") of an interest of the Debtor in property.

70. Each of the Mortgage Transfers was made within six (6) years of the Petition Date.

71. At all relevant times there have been one or more creditors who have held and still hold matured or un-matured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

72. The Mortgage Transfers were made with the actual intent to hinder, delay, or defraud entities to which the Debtor was or became indebted to after each Mortgage Transfer occurred.

73. At the time of the Mortgage Transfers, the Lender was aware or should have been aware that the Debtor was dissolved and the Loan Documents and Foreclosure Action were

legally impermissible. Thus, the Lender received the Mortgage Transfers without good faith and with the knowledge of their avoidability.

74.     Pursuant to sections 276, 278, and 279 of the New York Debtor & Creditor Laws (the "**DCL**"), and section 544 and 550 of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment: (a) avoiding the Mortgage Transfers, (b) directing that the Mortgage Transfers be set aside, (c) requiring the Lender, as the recipient of the Mortgage Transfers, to take such steps as necessary to set aside the Mortgage Transfers, and (d) recovering attorneys' fees from the Lender.

### Count VI
### (Avoidance of Fraudulent Conveyances - New York Law, DCL §§ 273, 278, and 279)

75.     The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

76.     Each of the Mortgage Transfers constituted a transfer of an interest of the Debtor in property.

77.     At all relevant times there have been one or more creditors who have held and still hold matured or un-matured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

78.     The Debtor did not receive fair consideration for the Mortgage Transfers.

79.     The Debtor was insolvent at the time Kim Mortimer and the Lender caused the Mortgage Transfers to occur, or, in the alternative, the Debtor became insolvent as a result of the Mortgage Transfers.

80.     At the time of the Mortgage Transfers, the Lender was aware or should have been aware that the Debtor was dissolved and the Loan Documents and Foreclosure Action were legally impermissible.  Thus, the Lender received the Mortgage Transfers without good faith and with the knowledge of their avoidability.

81.     Pursuant to sections 273, 278, and 279 of the DCL, and section 544 and 550 of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment: (a) avoiding the Mortgage Transfers, (b) directing that the Mortgage Transfers be set aside, and (c) requiring the Lender, as the recipient of the Mortgage Transfers, to take such steps as necessary to set aside the Mortgage Transfers.

## Count VII
**(Avoidance of Fraudulent Conveyances - New York Law, DCL §§ 274, 278, and 279)**

82.     The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

83.     Each of the Mortgage Transfers constituted a transfer of an interest of the Debtor in property.

84.     At all relevant times there have been one or more creditors who have held and still hold matured or un-matured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

85.     The Debtor did not receive fair consideration for the Mortgage Transfers.

86.     At the time Kim Mortimer and the Lender caused the Mortgage Transfers to occur, the Debtor was engaged in, or was about to engage in, a business or transaction for which

the property remaining in its hands after each of the transfers constituted unreasonably small capital.

87.     At the time of the Mortgage Transfers, the Lender was aware or should have been aware that the Debtor was dissolved and the Loan Documents and Foreclosure Action were legally impermissible.  Thus, the Lender received the Mortgage Transfers without good faith and with the knowledge of their avoidability.

88.     Pursuant to sections 274, 278, and 279 of the DCL, and section 544 and 550 of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment: (a) avoiding the Mortgage Transfers, (b) directing that the Mortgage Transfers be set aside, and (c) requiring the Lender, as the recipient of the Mortgage Transfers, to take such steps as necessary to set aside the Mortgage Transfers.

## <u>Count VIII</u>
**(Avoidance of Fraudulent Conveyances - New York Law, DCL §§ 275, 278, and 279)**

89.     The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

90.     Each of the Mortgage Transfers constituted a transfer of an interest of the Debtor in property.

91.     At all relevant times there have been one or more creditors who have held and still hold matured or un-matured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

92.     The Debtor did not receive fair consideration for the Mortgage Transfers.

93.     At the time Kim Mortimer and the Lender caused the Mortgage Transfers to occur, the Debtor had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

94.     At the time of the Mortgage Transfers, the Lender was aware or should have been aware that the Debtor was dissolved and the Loan Documents and Foreclosure Action were legally impermissible. Thus, the Lender received the Mortgage Transfers without good faith and with the knowledge of their avoidability.

95.     Pursuant to sections 275, 278, and 279 of the DCL, and section 544 and 550 of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment: (a) avoiding the Mortgage Transfers, (b) directing that the Mortgage Transfers be set aside, and (c) requiring the Lender, as the recipient of the Mortgage Transfers, to take such steps as necessary to set aside the Mortgage Transfers.

### Count IX
### (Disallowance of all Claims – 11 U.S.C. § 502(a), (b), (d), and (j))

96.     The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

97.     The Lender's POC and any other claims asserted by the Lender against the Debtor or the Debtor's estate (collectively, the "**Lender's Claims**") must be disallowed to the extent the Lender relies upon certain of the Loan Documents and the Foreclosure Judgment, which are void because they are based on claims against the Debtor that arose after the Dissolution Date.

98.     To the extent the Loan Documents are not void, the Lender's POC does not include the September 2016 Note and thus does not establish either (i) the Lender's entitlement to interest or advances beyond the amounts specified in the Foreclosure Judgment, to the extent

the Foreclosure Judgment is not void, or (ii) the amount of the obligation secured by the Last Mortgage.

99.     The Lender is also a transferee of avoidable transfers under sections 544, 547 and 548 of the Bankruptcy Code and sections 273-279 of the DCL, which are recoverable by the Chapter 11 Trustee under section 550 of the Bankruptcy Code.

100.     The Lender has not paid to the Chapter 11 Trustee the amount of the avoidable transfers, or turned over such property, for which the Lender is liable under section 550 of the Bankruptcy Code.

101.     Pursuant to section 502(a), the Chapter 11 Trustee may object to the Lender's claims in this chapter 11 case.

102.     Pursuant to section 502(b)(1), any and all claims of the Lender and/or its assignee, against the Debtor or the Debtor's chapter 11 estate must be disallowed as arising from transactions which are impermissible and void because they took place after the Dissolution Date.

103.     Pursuant to section 502(b)(1), the Lender's Claims must be disallowed to the extent  the Lender's POC fails to establish an entitlement to the amounts asserted or that such amount is  secured under any agreement or New York law.

104.     Pursuant to section 502(d) of the Bankruptcy Code, Lender's Claims as asserted against the Debtor or the Debtor's chapter 11 estate must be disallowed until such time as the Lender pays to the Chapter 11 Trustee an amount equal to the aggregate amount of the avoidable transfers, plus interest and costs.

105.     Pursuant to section 502(j), any and all claims of the Lender, and/or its assignee, against the Debtor or the Debtor's chapter 11 estate previously allowed by the Debtor or the

Chapter 11 Trustee, must be reconsidered and disallowed until such time as the Lender pays the Chapter 11 Trustee an amount equal to the aggregate amount of the avoidable transfers.

106.    Pursuant to sections 502(a), (b), (d), and (j) of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment disallowing any claims held or filed by the Lender against the Debtor or the Debtor's chapter 11 estate.

**Count X**
**(Reclassification of Claims and Determining Liens are Void**
**– 11 U.S.C. § 502(a), (b) and (j) and 506)**

107.    The Chapter 11 Trustee repeats and reasserts the allegations contained in all of the preceding paragraphs as if the same were set forth herein at length.

108.    To the extent the Lender's Claims are not disallowed, the Lender's Claims must be reclassified as general unsecured claims to the extent the Lender relies upon certain of the Loan Documents and the Foreclosure Judgment, which are void because they are based on claims against the Debtor that arose after the Dissolution Date.

109.    To the extent the Loan Documents are not void, the Lender's POC does not include the September 2016 Note and thus does not establish either (i) the Lender's entitlement to interest or advances beyond the amounts specified in the Foreclosure Judgment, to the extent the Foreclosure Judgment is not void, or (ii) the amount of the obligation secured by the Last Mortgage.

110.    Pursuant to section 502(a), the Chapter 11 Trustee may object to the Lender's claims in this chapter 11 case.

111.    Pursuant to section 506(a)(1), the Lender's Claims are not secured because the Lender does not have an interest in the estate's interest in property.

112.     Pursuant to section 506(d), the Lender's asserted liens allegedly secured claims against the Debtor are void to the extent the Lender's Claims are not allowed as secured claims by the Court.

113.     Pursuant to section 502(b)(1), any and all claims of the Lender and/or its assignee, against the Debtor or the Debtor's chapter 11 estate must be disallowed as arising from transactions which are impermissible and void because they took place after the Dissolution Date.

114.     Pursuant to section 502(b)(1), the Lender's POC must be disallowed as a secured claim to the extent  the Lender's POC fails to establish an entitlement to the amounts asserted or that such amount is  secured under any agreement or New York law.

115.     Pursuant to section 502(j), any and all claims of the Lender, and/or its assignee, against the Debtor or the Debtor's chapter 11 estate previously allowed as secured claims by the Debtor or the Chapter 11 Trustee, must be reconsidered and disallowed as secured claims.

116.     Pursuant to sections 502(a), (b), and (j) and 506(a)(1) and (d) of the Bankruptcy Code, the Chapter 11 Trustee is entitled to a judgment reclassifying the Lender's Claims as general unsecured claims and decreeing any liens asserted by the Lender against the Debtor or the Debtor's estate are void.

WHEREFORE, the Chapter 11 Trustee respectfully request that this Court enter judgment in favor of the Chapter 11 Trustee and against the Lender as follows:

a.  On Count I: (a) declaring the Loan Documents are void, (b) declaring the Foreclosure Judgment is void, and (c) requiring the Lender to take such steps as necessary for the public records to reflect that the Loan Documents and Foreclosure Judgment are void.

b. On Count II: (a) avoiding the Transfers, (b) directing the Transfers be set aside, and (c) requiring the Lender, as the recipient of the Transfers, to take such steps as necessary to set aside the Transfers.

c. On Count III and IV: (a) avoiding the Potentially Fraudulent Transfers, (b) directing the Potentially Fraudulent Transfers be set aside, (c) requiring the Lender, as the recipient of the Potentially Fraudulent Transfers, to take such steps as necessary to set aside the Potentially Fraudulent Transfers, and (d) denying the Lender a replacement lien pursuant to section 548(c) of the Bankruptcy Code.

d. On Count V: (a) avoiding the Mortgage Transfers, (b) directing that the Mortgage Transfers be set aside, (c) requiring the Lender, as the recipient of the Mortgage Transfers, to take such steps as necessary to set aside the Mortgage Transfers, and (d) recovering attorneys' fees from the Lender.

e. On Counts VI, VII, and VII: (a) avoiding the Mortgage Transfers, (b) directing that the Mortgage Transfers be set aside, and (c) requiring the Lender, as the recipient of the Mortgage Transfers, to take such steps as necessary to set aside the Mortgage Transfers.

f. On Count IX: disallowing any claims held or filed by the Lender against the Debtor or the Debtor's chapter 11 estate.

g. On County X: reclassifying any claims held or filed by the Lender as general unsecured claims and decreeing any liens asserted by the Lender against the Debtor or the Debtor's estate are void.

and such other and further relief as this Court deems just and proper to grant the Chapter 11 Trustee, on behalf of the Debtor's estate, full relief in this case.

Dated:   New York, New York         WHITE AND WILLIAMS LLP
          November 23, 2020

*/s/ James C. Vandermark*
Amy E. Vulpio
James C. Vandermark
7 Times Sq., Suite 2900
New York, NY 100036
vulpioa@whiteandwilliams.com
vandermarkj@whiteandwilliams.com

*Counsel to Heidi J. Sorvino, Esq., as the Chapter 11 Trustee*