**Exhibit C**

(Foreclosure Complaint)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

2386 HEMPSTEAD, INC.,

Plaintiff

-against-

60 91st STREET CORP., and JOHN DOE # 1-10 and MARY ROE # 1-10 said names being fictitious, being and intended to be persons or entities claiming or having an interest in the premises that are the subject of this foreclosure action.

Defendants

Index No.

**SUMMONS WITH NOTICE**

Plaintiff designates NEW YORK County as the place of trial. Venue is based upon the County in which the mortgaged premises are situated.

Block 1204 Lot 54

**TO THE ABOVE NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the attorney for the Plaintiff within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

**NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT**

THE OBJECT of the above captioned action is to foreclose a Consolidated Mortgage to secure $1,700,000.00 and interest, recorded in the office of the Clerk/ Register of the County of New York on December 9, 2016 in CFRN 2016000435775, covering premises in New York, , New York ( Block 1204 Lot 54).

The relief sought in the within action is a final judgment directing the sale of the premises described above to satisfy the debt secured by the Mortgage described above. The

·1

Plaintiff also seeks a deficiency judgment against the Defendants for any debt secured by said Mortgage which is not satisfied by the proceeds of the sale of said premises.

**TO** the Defendants, John Roe 1-10 and Mary Roe 1-10
the Plaintiff makes no personal claim against you in this action. The claim for a deficiency judgment is made only against the Defendant **60-91st Street Corp.** , and not against any other Defendants.

## NOTICE

### YOU ARE IN DANGER OF LOSING YOUR HOME

**If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.**

**Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.**

**Sending a payment to your mortgage company will not stop this foreclosure action.**

**YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF ( MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.**

Dated: Ronkonkoma, New York
      November 15, 2017

                           **THE WOLINSKY LAW GROUP, P.C.,**
                                *Attorney for Plaintiff*
                            160-2 Remington Boulevard
                              Ronkonkoma, NY 11779
                                (631)588-2900

C:\Users\alex\Documents\Grodsky\Foreclosures\Mortimer\pleadings\summons.wpd    2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**2386 HEMPSTEAD, INC.,**

Plaintiff

-against-

**60 91ˢᵗ STREET CORP.**, and **JOHN DOE # 1-10** and
**MARY ROE # 1-10** said names being fictitious, being and
intended to be persons or entities claiming or having an interest in
the premises that are the subject of this foreclosure action.

Defendants

**VERIFIED COMPLAINT**
Mortgage Foreclosure

Index No.

Block 1204  Lot 54

Premises known as: 60 West 91ˢᵗ Street, New York, NY 10024

The Plaintiff(s), by its attorneys, **THE WOLINSKY LAW GROUP, P.C.** complaining
of the Defendant(s), alleges, upon information and belief:

## ALLEGATIONS RELATING TO ALL CAUSES OF ACTION

1.  Upon Information and belief, and at all of the times hereinafter mentioned the defendant,60
    91st Street Corp.,was and still is a corporation doing business under and by virtue of the laws
    of the State of New York.

2.  60 91st Street Corp., for the purpose of securing the payment to 2386 Hempstead, Inc. , of

1

the principal sum of $ 1,400,000.00 , with interest thereon, on or about August 13, 2015, for valuable consideration, executed and delivered to said 2386 Hempstead, Inc. a Note dated on that day (the "Note"), whereby said 60 91st Street. Corp. undertook and promised to pay to said 2386 Hempstead, Inc. the principal sum and interest thereon at the rate provided therein.

3.   As collateral security for the payment of said indebtedness, said 60-91st Street Corp. duly executed, acknowledged and delivered to said 2386 Hempstead, Inc. a Mortgage, dated August 13, 2015 (the "Mortgage"), whereby said 60 91st Street. Corp. mortgaged to said 2386 Hempstead, Inc. premises in Manhattan, New York, described in said Mortgage together with the appurtenances thereto as is more fully set forth in said Mortgage.

4.   Said Mortgage was duly recorded in the office of the Clerk/Register of the County of New York on August 31, 2015 in CRFN2015000301919. The mortgage recording tax thereon was duly paid.

5.   60 91st Street Corp., for the purpose of securing the payment to 2386 Hempstead, Inc. , of the principal sum of $ 300,000.00, with interest thereon, on or about October 3, 2016 for valuable consideration, executed and delivered to said 2386 Hempstead, Inc. a Note dated on that day (the "Note"), whereby said 60 91st Street. Corp. undertook and promised to pay to said 2386 Hempstead, Inc. the principal sum and interest thereon at the rate provided therein.

6.   As collateral security for the payment of said indebtedness, said 60-91st Street Corp. duly executed, acknowledged and delivered to said 2386 Hempstead, Inc. a Mortgage, dated

2

October 3, 2016 (the "Mortgage"), whereby said 60 91st Street. Corp. mortgaged to said 2386 Hempstead, Inc. premises in Manhattan, New York, described in said Mortgage together with the appurtenances thereto as is more fully set forth in said Mortgage.

7. Said Mortgage was duly recorded in the office of the Clerk/Register of the County of New York on December 9, 2016 in CRFN 2016000435774. The mortgage recording tax thereon was duly paid.

8. On October 3, 2016, the plaintiff, 2386 Hempstead, Inc., and the defendant, 60 91st Street Corp. Entered into a consolidation, extension and modification agreement combining the two afore said mortgages ans notes into one single obligation. A copy of this agreement is annexed as **EXHIBIT "A"**

9. On October 3, 2016, the defendant, 60 91st Street Corp., executed a consolidated note consolidating both of the aforesaid notes into one note . A copy of said note is annexed as **EXHIBIT "B".**

10. On October 3, 2016 the defendant, 60 91st Street Corp. Executed and delivered a consolidated mortgage, consolidating the two afore said mortgages into one single obligation. Said consolidated mortgage was recorded in the office of the Clerk/Register of the County of New York on December 9, 2106 in CRFN 2016000435775. A copy of said agreement is annexed as **EXHIBIT "C".**

11. The plaintiff is the owner and holder of the subject mortgage and note.

12. The owner and holder of the notes and mortgages as consolidated is not a "lender" as that term is defined New York State Banking Law §590 subd.1(f)or an "exempt organization"

3

as defined in New York State Banking Law §590 subd.1(e).

13. To the extent that the following are applicable to this mortgage, the mortgage originated in compliance with Banking Law §595-a and 6-l and 6-m and the plaintiff has complied with all of the provisions of Banking Law § 595-a and any rules and regulations promulgated thereunder, Banking Law §6-l and 6-m and Real Property Actions & Proceedings Law §1304.

14. Said Mortgages provided that in case of default in the payment of any principal or interest that might become due thereon, the holder of the Mortgages could declare the entire indebtedness secured by the Mortgages immediately due and payable, and the holder of the Mortgages was thereby empowered to sell the mortgaged premises according to law.

15. Said mortgages provided that in the event an interest payment was received more than fifteen days after its due date a late charge would be imposed.

16. Said mortgages provides in part that the Lender (plaintiff herein) has the right to protect the itself/himself/herself from possible losses that might result if the mortgagor ( defendant, 60 91st Street. Corp.) fail to pay with interest, any amount that the Lender spends under the mortgages to protect the value of the property and the Lenders rights in the property.

17. Said consolidated note (**Exhibit "B"**) provides in part that upon default interest will accrue on the unpaid balance at the maximum legal rate of interest per annum permitted by law which for corporate borrowers is 24.999%.

18. Said mortgages further provide that the mortgagor is required to pay all taxes and assessments that are imposed upon the property that are superior liens to the lien of the

4

mortgage.

19. Said mortgages further provide that the mortgagor must keep the premises insured against loss by fire or other casualty naming the mortgagee or holder of the mortgage as an additional insured in a sum sufficient to satisfy the mortgage in the event of a total loss.

20. Upon information and belief, defendants JOHN DOE #1-10 and MARY ROE #1-10 have some interest in or lien upon the mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of said Mortgage and is subject and subordinate thereto.

21. Upon information and belief, defendants, John Doe 1-10 and Mary Roe 1-10 have an interest in or lien upon the mortgaged premises or some part thereof, which interest or lien accrued subsequent to the lien of said mortgage and is subject and subordinate thereto.

22. The Mortgages provide that, in the case of foreclosure, the mortgaged premises may be sold in one parcel.

23. The plaintiff has complied with all notice requirements contained in the mortgages prior to the commencement of this action.

24. The mortgaged premises under foreclosure herein is to be sold subject to: any state of facts an accurate survey would show, the lien of any taxes which became or may become a lien on the premises prior to their sale at foreclosure, any assessments charged against the premises and unpaid at the time of the foreclosure sale, to covenants, restrictions and easements, if any, of record affecting said mortgaged premises and/or any violations thereof, and to zoning regulations and ordinances of the city, town or village in which said mortgaged

5

premises lies and/or any violations thereof.

25.     In order to protect his security, the Plaintiff may be compelled, during the pendency of this action, to pay sums for premiums on insurance policies, real estate taxes, assessments, water charges, and sewer rents which are or may become liens on the mortgage premises, and other charges which may be necessary for the protection of the mortgaged premises, and the Plaintiff prays that any sum or sums so paid, together with interest from the date of payment, shall be added to the Plaintiff's claim and be deemed secured by said Notes and Mortgages and adjudged a valid lien on the mortgaged premises, and that the Plaintiff be paid such sums, together with interest thereon, out of the proceeds of the sale of the mortgaged premises.

## AS AND FOR A FIRST CAUSE OF ACTION

26.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in those paragraphs of this complaint designated as 1-25 with the same force and effect as if fully set forth hereinafter herein..

27.     The terms of the mortgage provides that the entire principal balance then owing together with unpaid interest, late charges, un reimbursed advances, unpaid legal fees costs and disbursements incurred by the holder of the mortgage to enforce the terms of the mortgage were due and payable on October 3, 2017.

28.     The defendant, **60 91st  STREET CORP.,** has failed to satisfy the mortgage and pay the

6

foregoing sums due on October 3, 2017.

29.     The defendant, 60-91st Street, Corp., is in default under the terms of the notes and/or the

mortgages and pursuant to the terms of the notes and/or mortgages, the plaintiff is entitled

to the relief requested hereinafter herein.


## AS AND FOR A SECOND CAUSE OF ACTION


30.     The Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in those

paragraphs of this complaint designated as 1-29 with the same force and effect as if fully

set forth hereinafter herein..

31.     The Defendant, **60 91st STREET CORP.**, has failed to pay all of the real property

taxes assessed against the premises, aa smae became due.

32.     By reason of the foregoing, the defendant, **60 91st STREET CORP.**, is in default under

the terms of the note and/or the mortgage and pursuant to the terms of the note and/or

mortgage, the plaintiff is entitled to the relief requested hereinafter herein.


## AS AND FOR A THIRD CAUSE OF ACTION


33.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in those

paragraphs of this complaint designated as 1-33 with the same force and effect as if fully

set forth hereinafter herein.

7

34    In the Notes and/or Mortgages hereinbefore described the mortgagors , 60 91st Street. Corp.,agreed to pay the attorneys' fees of the holder of the Mortgage in the event of a default under the Note and Mortgage and the commencement of a suit to foreclose the same

35.   The mortgage is and has been in default and the plaintiff has incurred and will continue to incur legal fees, costs, and disbursement in the enforcement of the terms of the mortgage all to his/.her /its damages in a sum anticipated to be $100,000.00.

**WHEREFORE**, the Plaintiff demands judgment that the Defendants and all persons claiming under them or any of them, subsequent to the filing of the notice of pendency of this action, may be barred and foreclosed of all right, title, claim, lien and equity of redemption in the mortgaged premises; that said mortgaged premises may be decreed to be sold in one parcel according to law; that the money arising from the sale may be brought into court; that the Plaintiff may be paid the amount of principal and interest due on said Bonds and Mortgages as consolidated as hereinbefore set forth with interest to the time of such payment, and any sums paid by the Plaintiff for real estate taxes, assessments, water charges and sewer rents, insurance premium and other necessary charges or expenses to protect the lien of the Mortgages, and any sums expended for the protection or preservation of the property covered by said Mortgages, with interest thereon from the time of such payment, and attorneys' fees of $100,000.00 for legal services rendered in enforcing the terms of the note and mortgage as demanded in the Second  cause of action, and the costs and disbursements of this action, and all other amounts due the Plaintiff under said Notes and Mortgages, so far as the

8

amount of such money properly applicable thereto will pay the same; and that the Defendants, 60

91st Street. Corp. may be adjudged to pay any deficiency which may remain, after applying all

moneys received from the sale of the mortgaged premises, of the indebtedness secured by the Note

and Mortgage or to be paid to the Plaintiff as costs or otherwise hereunder; and that the Plaintiff may

have such other and further relief in the mortgaged premises as may be just and equitable.

Dated: Ronkonkoma, NY
      November 13, 2017

                  **The Wolinsky Law Group, P.C.**
                  *Attorneys for Plaintiff*
                  160-2 Remington Boulevard
                  Ronkonkoma, NY 11779
                  (516)588-2900

C:\Users\alan\Documents\Grodsky\Foreclosures\Mortimer\pleadings\-COMPLAINT.wpd   9

NYSCEF DOC. NO. 1

# EXHIBIT A

Loan #:

Record and return to:
MOBERG & KOCORIS PC
150 Broadhollow Rd., Suite 320
Melville, NY 11747

Dist.
Sect.
Blok. 1204
Lot(s) 54
County New York

————————————— Space Above This Line for Recording Data —————————————

## CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

**WORDS USED OFTEN IN THIS DOCUMENT**

    (A)    "Agreement." This document, which is dated October 3, 2016, and exhibits and riders attached to this document will be called the "Agreement."

    (B)    "Borrower." 60 91st Street Corp., will be called "Borrower" and sometimes "I" or "me." Borrower's address is: 60 West 91st St., New York, NY 10024.

    (C)    "Lender." 2386 Hempstead Inc. will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of the State of . Lender's address is 45 Glen Cove Rd, Greenvale, NY 11548.

    (D)    "Mortgages." The mortgages, deeds of trust or other security instruments and related agreements (such as assignments, extensions, modification or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages".

    (E)    "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

    (F)    "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes".

    (G)    "Property." The property which is described in the Mortgage(s) and in Exhibit B to this Agreement (Legal Description), will be called the "Property." The Property is located at:

        60 West 91st Street      New York, NY 10024      New York
        [street]            [city]   [state & zip code]    [county]

I promise and I agree with Lender as follows:

**I.**    **BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**

    I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $1,700,000.00. Of this amount, U.S. $300,000.00 was advanced to me (or for my account) immediately prior to this consolidation, solely for the purpose of extension and modification of this agreement.

**II.**    **AGREEMENT TO COMBINE NOTES AND MORTGAGES**

    (A)    By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation".

    (B)    In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

        Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages - including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages - have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation".

III.    **AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE**

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

IV.    **AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants and provisions of the Mortgages.

V.    **NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

VI.    **BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

VII.    **WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

VIII.    **OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

IX.    **LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

X.    **TYPE OF PROPERTY**

Check box(es) as applicable.

[ ]    This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ]    This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

[X]    This Agreement does not cover real property improved as described above.

By signing this Agreement, Lender and I agree to all of the above.

60 91st Street Corp.

By: _____
    Kimberly Mortimer

_____

_____

_____

Lender: 2386 Hempstead Inc.

X _____

_____ Space Below This Line for Acknowledgments _____

STATE OF New York)
                  )ss:
COUNTY OF Suffolk)
On October 3, 2016, before me, the undersigned, personally appeared Kimberly Mortimer, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

                              Maria Terazco
                              Notary Public – State of New York
                              NO. 01TA6078704
                              Qualified in Suffolk County
_____       My Commission Expires April 29, 20 1Y
Notary Public

State of New York)
                 )ss:
County of Nassau )
On October 20 2016, before me, the undersigned, personally appeared Scott Grodsky

personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                              JAMES KOCORIS
                              Notary Public, State of New York
                              No. 02KO6020328
                              Qualified in Nassau County
_____       Commission Expires March 1, 20 19
Notary Public

TO BE USED ONLY WHEN THE ACKNOWLEDGEMENT IS MADE OUTSIDE NEW YORK STATE

State(or District of Columbia, Territory, of Foreign Country) of                              ss:

On June 12, 2015 before me, the undersigned, personally appeared

Personally known to me or proved to me on the basis of satisfactory evidence to to the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, then individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in

the _____ in _____
(insert the City or other political subdivision) (and insert the State or County or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

# EXHIBIT F

# EXHIBIT B

Loan #:

# CONSOLIDATED
## INTEREST-ONLY PERIOD FIXED RATE NOTE

October 3, 2016                                New York
[Date]                 Melville,                [State]
                        [City]
              60 West 91st St., New York, NY 10024
                    [Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $1,700,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is 2386 Hempstead Inc. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

**(A)   Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 12 months.

I will make my monthly payment on the first day of each month beginning on November 3, 2016. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on October 3, 2017, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 45 Glen Cove Rd., Greenvale, NY 11548 or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $4,250.00 for the first 12 months of this Note. The Note Holder will notify me prior to the date of change in monthly payment. The borrower shall have the option to pay only $3,500.00 per month for the first 12 months of this Note. If the borrower elects this reduced payment, the shortage of $750.00 per month shall be added to the payoff amount that will be due on October 3, 2017.

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.     **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail, return receipt requested, to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.     **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.     **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.     **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11.     **DEFAULT**

In the event of any acceleration of the due date of any amount or amounts due under this note by reason of the Maker's failure to comply with the terms, covenants and conditions of this note, or on and after the maturity date set forth herein, whichever occurs first, it is agreed by the parties that interest on such amounts shall be computed at the maximum legal rate from the date of acceleration or maturity until the entire debt evidenced hereby is satisfied whether or not, notice of acceleration is delivered to Maker; in the event an action is instituted to collect the debt herein or to foreclose under the terms of the Mortgage and Security Agreement, or to foreclose any mortgage or mortgages given now or hereafter as collateral security for this indebtedness, interest on the amounts due hereunder shall be computed at the maximum legal rate from the date of acceleration or maturity of the indebtedness evidenced hereby until the entire debt is paid in full. All such interest shall be secured by the Mortgage and Security Agreement. Maker agrees that the time of repayment of the debt when due as hereinabove stated is of unique and specific importance and financial necessity to the holder of this note and the Mortgage and Security Agreement, and time is hereby made of the essence. It is further understood that the foregoing provisions of this paragraph do not constitute a consent or agreement on the part of the holder of this note to extend or postpone the time of such payment beyond the present date of maturity hereof. If any action is instituted to collect the debt herein or to foreclose the Mortgage and Security Agreement, or to foreclose under the terms of the Mortgage and Security Agreement or any collateral mortgage collaterally securing the debt herein whether granted now or at any future time, the Maker, and any guarantor, endorser or surety hereby severally agree to pay the reasonable attorney's fee incurred by the holder of this note for each such action, together with all costs and disbursements incurred in connection therewith, which attorney's fees, costs and disbursements shall be added to the amount due hereunder.

In no event shall the undersigned be charged more than the highest rate of interest which may be lawfully charged by the holder hereof and paid by the undersigned on the indebtedness evidenced hereby. It is therefore, agreed that if at any time interest on the indebtedness evidenced hereby would otherwise exceeds the highest lawful rate, the rate shall be automatically reduced and only such highest lawful rate will be paid by the undersigned. Should any amount be paid by the undersigned in excess of such highest lawful amount, such excess shall be deemed to have been paid in reduction of the principal balance hereof.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

60 91st Street Corp.

_____ (Seal)

By: Kimberly Mortimer

_____ (Seal)

_____ (Seal)

_____ (Seal)

Loan #:

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY INSTRUMENT

This BALLOON PAYMENT RIDER ("Rider") is made this October 3, 2016, and amends a Note in the amount of $1,700,000.00 (the "Note" made by the person(s) who sign below ("Borrower") to 2386 Hempstead Inc. and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated and given by Borrower to secure repayment of the Note.

In addition to the agreements and provisions made in the Note and the Security Instrument, both Borrower and Lender further agree as follows:

IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON (THE "MATURITY DATE"). BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT". THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.

_____
Witness

_____
Witness

60 91st Street Corp.

_____
By: Kimberly Mortimer

Loan #:

## PREPAYMENT ADDENDUM TO NOTE

Date:   October 3, 2016

Borrower(s):   60 91st Street Corp.

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this October 3, 2016 and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of 2386 Hempstead Inc. ("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 4 of the Note is amended to read in its entirety as follows:

4.    BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.
If within six (6) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to three (3) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

Date:   October 3, 2016

60 91st Street Corp.

By: Kimberly Mortimer

*[Sign original only]*

STATE OF NEW YORK )
) ss:
COUNTY OF SUFFOLK )

On October 3, 2016, before me, the undersigned, personally appeared **Kimberly Mortimer**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

JAMES KOCORIS
NOTARY PUBLIC - STATE OF NEW YORK
NO. 02KO6020225
QUALIFIED IN NASSAU COUNTY
Commission Expires March 1, 20__

PAY TO THE ORDER OF

WITHOUT RECOURSE
2386 Hempstead Inc.

INDEX NO. 850274/2017
RECEIVED NYSCEF: 11/16/2017

# EXHIBIT C

Loan #:
After Recording Return To:
**MOBERG & KOCORIS PC**
150 Broadhollow Rd., Suite 320
Melville, NY 11747

[Space Above This Line For Recording Data]

# CONSOLIDATED MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated October 3, 2016, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."** 60 91st Street Corp., whose address is 60 West 91st St, New York, NY 10024 sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."** 2386 Hempstead Inc. will be called "Lender." Lender is a corporation or association which exists under the laws of the State of . Lender's address is 45 Glen Cove Rd, Greenvale, NY 11548.

**(D) "Note."** The note signed by Borrower and dated September 2016 will be called the "Note." The Note shows that I owe Lender One Million Seven Hundred Thousand and 00/100 Dollars (U.S. $1,700,000.00 ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by November 3, 2017.

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[X] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Other(s) (specify)
[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" mean any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, and as defined in, paid under the coverage described, in Section 5): for (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

    (A) The Property which is located at 60 West 91st St., New York, NY 10024. This Property is in New York County. It has the following legal description:

AS DESCRIBED IN SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF.

District:
Section:
Block:      1204
Lot:        54

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record. I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:
   1. **Borrower's Promise To Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.
   Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment to be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.
   2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.
   If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.
   Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.
   Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) Borrower's Obligations. I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents, and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, and flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if the Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to the Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the Insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property. Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance in force from time to time. Mortgage insurers may enter into agreements with other parties that change or modify their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance". It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower will owe for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has -- if any -- regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender.

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement of this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup. I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the

presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under the Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:
    (a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument.
    (b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
        (1) The promise or agreement that I failed to keep or the default that has occurred;
        (2) The action that I must take to correct that default;
        (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
        (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
        (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
        (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.
    (C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**
    [ ]    This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
    [ ]    This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
    [X]    This Security Instrument does not cover real property improved as described above.

Loan #:

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY INSTRUMENT

This BALLOON PAYMENT RIDER ("Rider") is made this October 3, 2016, and amends a Note in the amount of $1,700,000.00 (the "Note" made by the person(s) who sign below ("Borrower") to 2386 Hempstead Inc. and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated and given by Borrower to secure repayment of the Note.

In addition to the agreements and provisions made in the Note and the Security Instrument, both Borrower and Lender further agree as follows:

IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON (THE "MATURITY DATE"). BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT". THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.

_____
Witness

_____
Witness

60 91st Street Corp.

_____
By: Kimberly Mortimer

Loan #:

# PREPAYMENT RIDER

Date: October 3, 2016

Borrower(s): 60 91st Street Corp.

THIS PREPAYMENT RIDER (the "Rider") is made this October 3, 2016, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of 2386 Hempstead Inc. ("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at:

60 West 91st St., New York, NY 10024
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Agreement, Borrower and Lender further covenant and agree as follows:

A.    PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

4.    BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within six (6) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to three (3) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

Date: October 3, 2016

60 91st Street Corp.

By: Kimberly Mortimer

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 9 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____

60 91st Street Corp.

By: Kimberly Mortimer

_____

_____

STATE OF New York)
                    )ss:
COUNTY OF Suffolk)

On October 3, 2016, before me, the undersigned, personally appeared Kimberly Mortimer, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

Marla Tarasco
Notary Public - State of New York
NO. 01TA6073704
Qualified in Suffolk County
My Commission Expires April 29, 20_1_

NEW YORK -Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033 1/01    (page 9 of 9 pages)

## VERIFICATION

STATE OF NEW YORK)
COUNTY OF SUFFOLK) SS:

**ALAN M. WOLINSKY**, being duly sworn, deposes and says:

I am a member of the firm of THE WOLINSKY LAW GROUP, P.C., attorneys of record for, 2386 Hempstead, Inc., a party in the within action. I have read the foregoing complaint and I know the contents thereof; and the same are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief and as to those matters, I believe them to be true. This verification is made by me because the above party is not presently in a county where my firm maintains an office for the practice of law.

The grounds of my belief as the matters not stated on my own knowledge are based upon a review of all papers and documents maintained by and discussions had with Scott Grodsky, president of the corporation.

Sworn to before me this
13th day of November, 2017

_____
NOTARY PUBLIC

MICHAEL H. FIER
Notary Public, State of New York
No. 02FI4830441
Qualified in Suffolk County
Commission Expires Oct. 31, 2021

_____
**ALAN M. WOLINSKY**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.

2386 HEMPSTEAD, INC.,

Plaintiff

-against-

60 91st STREET CORP., and **JOHN DOE # 1-10** and **MARY ROE # 1-10** said names being fictitious, being and intended to be persons or entities claiming or having an interest in the premises that are the subject of this foreclosure action.

Defendants

## SUMMONS AND VERIFIED COMPLAINT
## FORECLOSURE

### THE WOLINSKY LAW GROUP., P.C.
*Attorneys for Petitioner*
*Office and Post Office Address, Telephone*
**160-02 Remington Boulevard**
**Ronkonkoma, New York 11779**
**(631) 588-2900**

ALAN M. WOLINSKY

Signed Pursuant to NYCRR§ 130-1.1-a

To:

Service of a copy of the within is hereby admitted.

Dated:_____19