WHITE AND WILLIAMS LLP
Amy E. Vulpio, Esq.
James C. Vandermark, Esq.
7 Times Square, Suite 2900
New York, NY 10036
(212) 244-9500
vulpioa@whiteandwilliams.com
vandermarkj@whiteandwilliams.com

*Counsel to Heidi J. Sorvino, Esq.,
as the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| 60 91st Street Corp., <br> Debtor. | Case No. 20-10338 (SCC) |

**MOTION OF THE CHAPTER 11 TRUSTEE
PURSUANT TO SECTIONS 105, 363, AND 502(c) OF THE BANKRUPTCY CODE FOR
ORDER (I) ESTIMATING THE CLAIM OF 2386 HEMPSTEAD, INC. AND (II)
APPROVING SELECTION OF STALKING HORSE BIDDER, BREAK-UP FEE AND
EXPENSE REIMBURSEMENT, AND RELATED RELIEF IN CONNECTION WITH
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

Heidi J. Sorvino (the "**Chapter 11 Trustee**"), as the duly appointed Chapter 11 Trustee for the bankruptcy estate of 60 91st Street Corp. (the "**Debtor**"), hereby submits this motion (the "**Motion**") pursuant to Sections 105, 363, and 502(c) of title 11 of the United States Code (the "**Bankruptcy Code**") for the estimation of the claims asserted by 2386 Hempstead, Inc. (the "**Lender**") and approval of the Chapter 11 Trustee's selection of a stalking horse bidder, a break-up fee and expense reimbursement in connection therewith, and certain related relief, as described more fully below, in connection with the Chapter 11 Trustee's proposed sale of substantially all

of the Debtor's assets. In support of the Motion, the Chapter 11 Trustee relies upon her Declaration submitted herewith (the "**Sorvino Declaration**") and respectfully states that:

## PRELIMINARY STATEMENT

1. The Chapter 11 Trustee respectfully requests this Court estimate the claims asserted by the Lender to determine the Lender's ability to credit bid at the Auction (as defined below). The Lender's claims are based on loan transactions entered into with the Debtor, after the Debtor was dissolved, and are thus, void. On December 9, 2019 – less than ninety days before the Petition Date (as defined below) – Lender obtained a Decision + Order on Motion, Judgment of Foreclosure and Sale (the **"Foreclosure Judgment"**) against the Debtor, which forms the basis for Lender's claims. The Foreclosure Judgment is similarly void as it is based on the void loan transactions and was entered against the Debtor after its dissolution. Furthermore, the Foreclosure Judgment is based on the Consolidated Note (as defined below), which was not secured prior to the entry of the Foreclosure Judgment during the preference window and thus Lender's purported lien is avoidable as a preferential transfer under section 547 of the Bankruptcy Code.

2. Pursuant to this Motion, the Chapter 11 Trustee also seeks to compensate Pinetree Group Inc. (the "**PGI**") for serving as the stalking horse bidder whose bid will be subject to higher or better offers, and seeks entry of an order approving: (a) PGI as the Stalking Horse Bidder, and (b) the Bid Protections contemplated by the Bidding Procedures Order (as defined below). The Chapter 11 Trustee and PGI believe the Bid Protections are reasonable in light of the benefits to the Debtor's estate of having a stalking horse bidder at the Auction (as defined below) and the risk to PGI that a third-party offer ultimately may be accepted. The Chapter 11 Trustee further believes that approval of PGI as the Stalking Horse Bidder and the Bid Protections are necessary to preserve and enhance the value of the Debtor's assets.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtor's Chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 363, and 502(c).

## BACKGROUND

5. On February 4, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). On April 30, 2020, the Bankruptcy Court entered the Order Approving the Appointment of the Chapter 11 Trustee [Doc. No. 28] (the "**Order**") appointing Ms. Sorvino as the Chapter 11 Trustee in the Debtor's bankruptcy case. Until the appointment of the Chapter 11 Trustee, Kim Mortimer, as the Debtor's chief executive officer, operated the Debtor's business and managed its affairs as a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code. Sorvino Declaration, ¶ 3.

6. The Debtor's assets (the "**Assets**") primarily consist of the real property known as and located at 60 West 91st Street, New York, New York (the "**Property**"). Sorvino Declaration, ¶ 4. The Property is an apartment building consisting of nine (9) units. Sorvino Declaration, ¶ 4.

7. The following creditors assert secured claims against the Assets: New York State Department of Taxation and Finance (the "**NYSDTF**"); New York City Department of Finance (the "**NYCDF**"); New York City Water Board (the "**Water Board**" and with the NYSDTF and the NYCDF, collectively, the "**Secured Government Creditors**"); 2386 Hempstead, Inc. (the "**Lender**"), and Approved Oil Company of Brooklyn ("**Approved Oil**" and with the Secured

3

26272069v.1

Government Creditors and the Lender, collectively, the "**Secured Creditors**"). The Secured Creditors' claims against the Assets are summarized as follows:

| Proof of Claim | Name | Claim Amount |
|---|---|---:|
| 1-1 | NYSDTF | $223.14 |
| 2-1 | Lender | $3,016,316.05 |
| 5-1 | NYCDF | $166,908.74 |
| 6-1 | Water Board | $3,997.78 |
| 7-1 | Approved Oil | $1,105.98 |

Sorvino Declaration, ¶ 5.

8. The Chapter 11 Trustee is in the process of reviewing the claims asserted by the Secured Creditors. Sorvino Declaration, ¶ 6. At this time, the Chapter 11 Trustee is not able to acknowledge whether the Secured Creditors have an interest in the Assets that is valid, perfected, and undisputed. Sorvino Declaration, ¶ 6.

9. Since her appointment, the Chapter 11 Trustee has worked diligently to review the Debtor's records, inspect and evaluate the Assets, and analyze potential options for the Debtor to address the claims asserted by creditors in the case (the "**Claims**"). Sorvino Declaration, ¶ 7. In doing so, the Chapter 11 Trustee has held discussions with the Lender, the U.S. Trustee, and Ms. Mortimer regarding the Claims and how to maximize the recovery of stakeholders in this Chapter 11 case. Sorvino Declaration, ¶ 7.

10. The Chapter 11 Trustee determined that the interests of the Debtor's estate and the stakeholders in this Chapter 11 case would be best served by selling the Assets. Sorvino Declaration, ¶ 8. The Debtor has carried a heavy debt load since mortgaging the Real Property and allowed significant tax debts to accrue prior to the Petition Date. Sorvino Declaration, ¶ 8. Thus, a sale of the Assets is the best means to maximize the value of the Assets. Sorvino Declaration, ¶ 8.

11. The sale of the Assets is the primary means for addressing not only the claims of the Secured Creditors, but all of the obligations of the Debtor and the Debtor's estate, including the professional fees incurred in this case, tax obligations from the sale of the Assets, and the priority and general unsecured claims asserted in this case. Sorvino Declaration, ¶ 9.

12. On September 18, 2020, the Bankruptcy Court entered the *Order Under Bankruptcy Code §§ 105, 363, 365 and 1146 and Bankruptcy Rules 6004 and 6006; (1) Authorizing and Approving Terms and Conditions of Sale of Debtor's Assets Subject to Higher or Better Offers, Free and Clear of All Liens, Claims and Encumbrances; (2) Establishing Procedures to Confirm Highest or Best Offer Received at Sale; (3) Approving Form, Time and Scope of Notice of Sale; and (4) Granting Related Relief* [ECF No. 162] (the "**Bidding Procedures Order**")[1] establishing the bidding procedures and terms and conditions of the sale of the Assets. Currently, an auction of the Assets (the "**Auction**") is scheduled for December 9, 2020, and a hearing to approve the sale of the Assets to the successful bidder at the auction is scheduled for December 17, 2020. Sorvino Declaration, ¶ 10.

13. The Bidding Procedures Order provides:

> At any time prior to the Auction, the Chapter 11 Trustee, with reasonable consent of the Lender, may select a Bidder to act as a stalking horse bidder in connection with the Auction (the "**Stalking Horse Bidder**") and enter into a purchase agreement with such Stalking Horse Bidder (the "**Stalking Horse Agreement"),** which shall be subject to higher and better offers at the Auction, to establish the minimum bid for the Assets at the Auction. The Chapter 11 Trustee also reserves the right, with reasonable consent of the Lender, and subject to its rights under 11 U.S.C. § 363(f), to (i) provide a breakup fee (the "**Breakup Fee**") of a maximum amount of three percent (3%) of the proposed purchase price under such Stalking Horse Agreement payable to the Stalking Horse Bidder from the proceeds of the Sale, and (ii) agree to reimburse reasonable and documents out-of-pocket fees and expenses not to exceed $25,000 (the "**Expense Reimbursement**" and with the Breakup Fee, collectively, the "**Bid Protections**") to the extent the Chapter 11 Trustee determines, in her sole discretion and as a matter of her reasonable business judgment, that provision of such Bid Protections is likely to maximize the value of the Assets.

---
[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

Sorvino Declaration, ¶ 10.

14. As of the Date of this Motion, the Brokers have shown the Property to no less than eighty (80) prospective bidders, including representatives of PGI and the Lender. Sorvino Declaration, ¶ 11. The prospective bidders have proposed certain bids and terms to the Brokers for the purchase of the Assets. Sorvino Declaration, ¶ 11. The Brokers and the Chapter 11 Trustee reviewed these proposals and found the offer presented by PGI to be the current highest and best offer for the Assets, which includes, amongst other things, a proposed purchase price of $3,100,000 for the Assets, payment of the Buyer's Premium, and acceptance of the Assets subject to the lease of the tenant in Unit F of the Property. Sorvino Declaration, ¶ 11.

15. On or about November 17, 2020, the Chapter 11 Trustee presented the terms of PGI's proposal to the Lender and began discussions with the Lender regarding the selection of a Stalking Horse Bidder. Sorvino Declaration, ¶ 13. The Lender refused to consent to allowing PGI serve as the Stalking Horse Bidder, asserting the proposed bid was too low. Sorvino Declaration, ¶ 13.

16. On November 23, 2020, the Chapter 11 Trustee filed the *Complaint for a Declaratory Judgment, to Avoid and Recover Transfers, and to Disallow Claims* (the "**Trustee's Complaint**") to initiate adversary proceeding no. 20-01322 (the "**Adversary Proceeding**"). Through the Trustee's Complaint, the Chapter 11 Trustee seeks, amongst other things, a declaratory judgment finding the loan transactions between the Debtor and the Lender to be void, to avoid the Foreclosure Judgment as a preferential transfer, and to disallow the Lender's claim in its entirety or to reclassify the Lender's claim as a general unsecured claim. Sorvino Declaration, ¶ 14.

17. On November 25, 2020, the Lender proposed to serve as the Stalking Horse Bidder with an effective offer of $3,130,000 (the "**Lender's Bid**"). Sorvino Declaration, ¶ 15. The Lender's Bid consisted, in part, of a credit bid relying on the Lender's secured claims. Sorvino Declaration, ¶ 15.

18. The Chapter 11 Trustee discussed both the proposal by PGI as well as the Lender's Bid with the Brokers, her counsel, and the other professionals engaged in this case. Sorvino Declaration, ¶ 16. After fully considering the competing proposals, the Chapter 11 Trustee concluded that PGI's proposal to serve as the Stalking Horse Bidder remained the highest and best offer for the Debtor's estate. Sorvino Declaration, ¶ 16. This was due, in part, to the potential chilling effect on additional bidding at the Auction if the Lender served as the Stalking Horse Bidder. Sorvino Declaration, ¶ 16.

19. Thereafter, the terms and conditions of the bid proposed by PGI were formalized between PGI and the Chapter 11 Trustee in the Purchase and Sale Agreement dated December 4, 2020 (the "**PSA**"). Sorvino Declaration, ¶ 17. In connection with the approval of the PSA, the Chapter 11 seeks approval of the Bid Protections provided for in the Bidding Procedures Order. Sorvino Declaration, ¶ 17. Pinetree has expressed its unwillingness to commit to hold open its offer to purchase the Assets unless the Chapter 11 Trustee is authorized to provide the Bid Protections. Sorvino Declaration, ¶ 17.

20. Apart from the estimation of the Lender's Claim and the Lender's refusal to provide consent for the Stalking Horse Bidder selected by the Chapter 11 Trustee, the relief requested by this Motion is consistent with the procedures implemented in connection with the Bidding Procedures Order. Sorvino Declaration, ¶ 18.

**BASIS FOR RELIEF REQUESTED**

A. **The Lender's Claims Should be Estimated at Zero or, in the alternative, Estimated to be a General Unsecured Claim**

21. Section 502 of the Bankruptcy Code, in relevant part, provides:

> (c) There shall be estimated for purpose of allowance under this section –
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).

22. The authority granted to the Court under section 502(c) of the Bankruptcy Code "provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *In re Adelphia Bus. Solutions, Inc.*, 314 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (*citing In re Continental Airlines, Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993) ("Bankruptcy Courts may estimate claims under § 502(c)(1) in order to (i) 'avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions,' and (ii) 'promote a fair distribution to creditors through a realistic assessment of uncertain claims.'").

23. "Bankruptcy courts are required to estimate claims 'to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings.'" *In re Chavez*, 381 B.R. 582, 587 (Bankr. E.D.N.Y. 2008) (*citing In re Adelphia Bus. Solutions, Inc.*, 341 B.R. at 423). However, "[n]either the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure provide any procedures or guidelines for estimation." *Id.* (*quoting DeGeorge Financial Corp. v. Novak (In re DeGeorge Financial Corp.)*, 2002 U.S. Dist. LEXIS 17621, at *34 (D. Conn. July 15, 2002)); *see also In re Lehaman Bros. Holdings*, 2018 Bankr. LEXIS 4276, at *44 (Bankr.

S.D.N.Y. Mar. 15, 2018). Courts use "'whatever method is best suited to the particular contingencies at issue'" and "methods used by courts have run the gamut from summary trials to full-blown evidentiary hearings to a mere review of pleadings [and] briefs." *In re Chavez, 381 B.R. at 587* (citations omitted); *see also In re Chemtura Corp.*, 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) (courts have "wide discretion" in how they accomplish estimation of claims).

24. Here, the Lender is "permitted to credit bid the full amount of its claims at the Auction." Bidding Procedures Order, Ex. A - Sale Terms, ¶ 15. However, the parties disagree on the amount that the Lender will be permitted to credit bid at the Auction because the Lender's claims are disputed and contingent on the outcome of the Adversary Proceeding. Thus, an estimation of the Lender's claims is necessary to unduly avoid further delaying the Auction and the continued efficient administration of the Debtor's estate.

25. Upon information and belief, there are a number of factual issues that are not truly disputed by either the Chapter 11 Trustee or the Lender, including:

   a. On or about July 29, 2009 (the "**Dissolution Date**"), the Debtor was dissolved by the State of New York pursuant to section 203-a of the New York Tax Laws, by the proclamation of the Secretary of State for the State of New York published on July 29, 2009.

   b. Prior to August 24, 2015, Ms. Mortimer created a new corporation, 60 91st Street Corporation (the "**New Corp.**") to operate and manage the Property.

   c. The Lender filed a proof of claim asserting a secured claim of $3,016,316.05, which was docketed as Claim 2-1 (the "**Lender's POC**").

   d. The Lender's POC states the basis for perfection of the secured claim is a "Mortgage Note" and attached to the Lender's POC is a copy of the Foreclosure

9

Judgment, the Consolidated Note (as defined in the Trustee's Complaint), and the Last Mortgage (as defined in the Trustee's Complaint).

e. The Last Mortgage purports to secure obligations for a "note signed by [the Debtor] and dated September 2016"; however, the Consolidated Note is dated October 3, 2016 and the Lender did not attach a September 2016 Note (as defined in the Trustee's Complaint) with the Lender's POC.

f. The Lender obtained the Foreclosure Judgment in the state court foreclosure action by filing a complaint (the "**Foreclosure Complaint**") that misrepresented the Debtor's corporate existence and ability to do business under the laws of the State of New York. Foreclosure Complaint, ¶ 1.

g. The Foreclosure Complaint did not include a copy of the September 2016 Note (as defined in the Trustee's Complaint).

h. The Foreclosure Judgment was timely appealed and that appeal was stayed pursuant to section 362(a) of the Bankruptcy Code.

Sorvino Declaration, ¶ 19.

26. After a corporation is dissolved, it is prohibited from carrying on new business because the corporation's legal existence terminates, except for a limited *de jure* existences solely for the purpose of winding up its affairs. *80-02 Leasehold, LLC v. CM Realty Holdings Corp.*, 123 A.D.3d 872, 874 (NY App. Div. 2d Dept. 2014); *Moran Enters., Inc. v. Hurst*, 66 A.D.3d 972, 975 (NY App. Div. 2d Dept. 2009) (*citing* Business Corporation Law § 1005(a)(1)).

27. Pursuant to Section 1005(a)(2) of the NY Business Corporation Law, "winding up" means "the performance of acts directed toward the liquidation of the corporation, including

the collection and sale of corporate assets." *172 E. 122 St. Tenants Ass'n v. Schwarz*, 73 N.Y.2d 340, 349 (1989) (citation omitted).

28. Moreover, only the claims and remedies available prior to the dissolution of a corporation are preserved; therefore, claims arising after the company is dissolved, and any judgment based on such a claim, are null and void. *See* NY Business Corporation Law § 1006(b); *see also Bayer v. Sarot*, 51 A.D.2d 366, 368 (NY App. Div. 1st Dept. 1976) ("all persons who had contracted or done business with the dissolved corporation are charged with knowledge of the statutes governing the termination of its corporate existence upon dissolution, and of the statutes governing its liquidation, and are bound thereby.").

29. The Debtor was dissolved and its legal existence terminated as of the Dissolution Date.

30. The Lender's claim arises from transactions with the Debtor after the Dissolution Date and are therefore null and void.

31. The Lender is a sophisticated party, charged with the knowledge of the Debtor's dissolution and the laws governing that dissolution, and had the means to determine the status of the Debtor's corporate existence prior to entering into the Loan Documents. Sorvino Declaration, ¶ 20. Upon information and belief, the Lender obtained a title search prior to entering into the loan transactions with the Debtor and the results of that search failed to identify that the Debtor was dissolved as of the Dissolution Date. Sorvino Declaration, ¶ 20. Upon further information and belief, the Lender informed the company that conducted the title search of this issue and they admitted to failing to identify the dissolution of the Debtor in their search. Sorvino Declaration, ¶ 20.

26272069v.1

32. Pursuant to sections 1005 and 1006 of the NY Business Corporation Law, the Lender impermissibly encumbered the Debtor's Property by obtaining the Loan Documents and Foreclosure Judgment following the dissolution of the Debtor. Therefore, the Chapter 11 Trustee is more than likely to obtain the relief sought in the Complaint, including a judgment declaring the Loan Documents and the Foreclosure Judgment is void. Therefore, the Lender's claims should be estimated as zero for purposes of credit bidding at the Auction.

33. Moreover, the Lender only presented the Consolidated Note in the foreclosure action and apparently relied on the Consolidated Note for standing to foreclose. *See Bayview Loan Servicing, LLC v. Kondaur Capital Corp.*, 166 A.D. 3d 843, 845 (NY App. Div., 2d Dept. 2018) ("plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that it was the holder or assignee of the underlying note at the time the action was commenced"). Upon information and belief, there is no recorded mortgage securing the Consolidated Note. Thus, the Lender was only able to secure the obligations under the Consolidated Note by the entry of the Foreclosure Judgment, which was within the ninety (90) day period prior to the Petition Date. Therefore, as more fully set forth in the Complaint, the Foreclosure Judgment is an avoidable transfer under section 547 of the Bankruptcy Code and the Lender's claims, to the extent not void, should be estimated as general unsecured claims. *See In re Rose,* 86 B.R. 193, *In re Orth-O-Vision, Inc.*, 49 B.R. 943, 944-95 (Bankr. E.D.N.Y. 1985) ("as a matter of law, whenever a general unsecured creditor obtains, within the preference period, a judicial lien against a debtor who cannot fully repay his unsecured creditors, he has received a preference.").

**B.  Approval of PGI as the Stalking Horse Bidder as well as the Bid Protections are in the Best Interests of the Debtor's Estate and All Interested Parties**

34. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." 11 U.S.C. § 363(b). A court can authorize a debtor to use property of the estate outside of the ordinary course pursuant to section 363(b)(1) of the Bankruptcy Code when there is a "sound business purpose" that justifies such use. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); (*In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (explaining that the Third Circuit adopted the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (noting that "going-out-of-business" sales are governed by section 363(b)).

35. In general, bidding incentives encourage a potential purchaser to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary acts attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process. Historically, bankruptcy courts have approved bidding incentives similar to the bidding protections proposed here under the "business judgment rule" which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in exercise of honest judgment. *See In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking"); *In re Marrose Corp.*, 1992 WL 33848, at *5 (Bankr. S.D.N.Y. Feb. 15, 1992) (stating that "agreements to provide breakup fees or reimburse of fees and expenses meant ot compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers"); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 657-658 (S.D.N.Y. 1992), appeal dismissed, 3 F.3e 49 (2d Cir. 1993) (establishing three basic factors for determining whether to permit breakup fees in bankruptcy: whether "the relationship of the parties who negotiated the break-up fee [is] tainted

13

by self-dealing or manipulation," whether the "fee hamper[s], rather than encourages[s], bidding" and whether "the amount of the fee [is] unreasonable relative to the purchase price").

36. Courts have routinely held that when the sale of assets in bankruptcy is done on a competitive bidding basis, it is appropriate to require parties submitting competing bids to submit bids that exceed existing bids by a specified minimum amount. *See In re Financial News Network, Inc.*, 931 F.2d 217 (2d Cir. 1991) (requiring that overbids exceed the initial offer by 9.5 percent).

37. Here, the selection of PGI as the proposed Stalking Horse Bidder and the Bid Protections are the product of good faith, arm's-length negotiations between the Chapter 11 Trustee and PGI. The Bid Protections are the same as contemplated by the Bidding Procedures Order and are fair and reasonable in amount and are reasonably intended to compensate for the risk to PGI of serving as a stalking horse bidder. Cause thus exists to approve PGI as the Stalking Horse Bidder as well as the Bid Protections. Specifically, PGI has expended, and likely will continue to expend, considerable time, money, and energy pursuing the sale, has engaged in extended and lengthy, good faith negotiations, and has provided a bid floor for the Debtor's Assets.

38. Further, the Bid Protections have already encouraged competitive bidding. PGI would not have entered in to the PSA without these provisions of the Bidding Procedures Order. The Bid Protections thus have already "induc[ed] a bid that otherwise would not have been made and without which bidding would [be] limited." *Calpine Corp. v. O'Brien Env. Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999). Similarly, PGI's offer provides a minimum bid on which other bidders can rely, thereby "increasing the likelihood that the price at which the [Assets will be] sold will reflect [their] true worth." *Id.*

39. In this instance, the Bid Protections will permit the Chapter 11 Trustee to insist that competing bids for the Assets made in accordance with the Bidding Procedures Order are

materially higher or otherwise better than the PSA (or competing agreement), which is a clear benefit to the Debtor's estate.

## NO PRIOR REQUESTS

40. Other than as already provided for in the Bidding Procedures Order, no previous request for the relief sought herein has been made to the Bankruptcy Court.

## WAIVER OF RULE 6004(h) STAY

41. In order to allow the immediate realization of value from the Assets consistent with the goal of a prompt liquidation, the Chapter 11 Trustee respectfully requests that any order granting this Motion be effective immediately, notwithstanding the stay imposed by Bankruptcy Rule 6004(h). As the Chapter 11 Trustee expressed above, the goal is to conduct an efficient administration of the Debtor's financial and business affairs. An expedient sale process will inure to the benefit of the Debtor's estate and all parties in interest. Waiver of Bankruptcy Rule 6004(h) will insure that the bargained-for protections sought by this Motion, to the extent approved by the Court, are in place and effective at the time of the Auction.

## NOTICE

42. Notice of the Motion will be given to the following parties, or, in lieu thereof, their counsel: (a) the Office of the U.S. Trustee for the Southern District of New York; (b) counsel to 2386 Hempstead, Inc.; and (c) all parties requesting service through the Court's CM ECF system. The Chapter 11 Trustee submits that, in light of the nature of the relief requested, no other or further notice need be provided.

WHEREFORE, the Chapter 11 Trustee respectfully requests that this Court enter an order, substantially in the form submitted herewith, and grant the relief requested in this Motion and such other and further relief as is just and proper.

Dated: New York, New York
December 4, 2020

WHITE AND WILLIAMS LLP

*/s/ James C. Vandermark*
Amy E. Vulpio
James C. Vandermark
7 Times Sq., Suite 2900
New York, NY 10036
vulpioa@whiteandwilliams.com
vandermarkj@whiteandwilliams.com

*Counsel to Heidi J. Sorvino, Esq., as the Chapter 11 Trustee*

16