WHITE AND WILLIAMS LLP
Amy E. Vulpio, Esq.
James C. Vandermark, Esq.
7 Times Square, Suite 2900
New York, NY 10036
(212) 244-9500
vulpioa@whiteandwilliams.com
vandermarkj@whiteandwilliams.com

*Counsel to Heidi J. Sorvino, Esq.,*
 *as the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| 60 91st Street Corp., <br> Debtor. | Case No. 20-10338 (SCC) |

**DECLARATION OF HEIDI J. SORVINO IN SUPPORT OF THE
MOTION OF THE CHAPTER 11 TRUSTEE
PURSUANT TO SECTIONS 105, 363, AND 502(c) OF THE BANKRUPTCY CODE FOR
ORDER (I) ESTIMATING THE CLAIM OF 2386 HEMPSTEAD, INC. AND (II)
APPROVING SELECTION OF STALKING HORSE BIDDER, BREAK-UP FEE AND
EXPENSE REIMBURSEMENT, AND RELATED RELIEF IN CONNECTION WITH
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

I, Heidi J. Sorvino, hereby declare:

1.      I am a partner in the law firm of White and Williams LLP and am admitted to

practice before this Court.  Pursuant to this Court's Order Approving the Appointment of the

Chapter 11 Trustee [Doc. No. 28] (the "**Appointment Order**"), I am the duly appointed Chapter

11 trustee in the above-captioned case for 60 91st Street Corp. (the "**Debtor**").

2.      I submit this Declaration in support of the *Motion of the Chapter 11 Trustee for*

*Pursuant to Sections 105, 363, and 502(c) of the Bankruptcy Code for Order (I) Estimating the*

*Claim of 2386 Hempstead, Inc. and (II) Approving Selection of Stalking Horse Bidder, Break-up*

*Fee and Expense Reimbursement, and Related Relief in Connection with the Sale of Substantially All of the Debtor's Assets* (the "**Motion**").[1]

3. On February 4, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). On April 30, 2020, this Court entered the Appointment Order for my appointment as the Chapter 11 trustee in the above-captioned case. Until my appointment, Kim Mortimer, as the Debtor's chief executive officer, operated the Debtor's business and managed its affairs as a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

4. The Debtor is the owner of the property located at 60 West 91st St., New York, NY 10024 (the "**Property**") which is an apartment building consisting of nine (9) units. The Summary of Assets and Liabilities filed by the Debtor with the Voluntary Petition for Non-Individuals Filing for Bankruptcy [Doc. No. 1] states the value of the Property is $8,900,000. However, based on information and belief, the Property likely has a value less than half that amount.

5. The following creditors assert secured claims against the Assets: New York State Department of Taxation and Finance (the "**NYSDTF**"); New York City Department of Finance (the "**NYCDF**"); New York City Water Board (the "**Water Board**" and with the NYSDTF and the NYCDF, collectively, the "**Secured Government Creditors**"); 2386 Hempstead, Inc. (the "**Lender**"), and Approved Oil Company of Brooklyn ("**Approved Oil**" and with the Secured Government Creditors and the Lender, collectively, the "**Secured Creditors**"). The Secured Creditors' claims against the Assets are summarized as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

| Proof of Claim | Name | Claim Amount |
|---|---|---|
| 1-1 | NYSDTF | $223.14 |
| 2-1 | Lender | 3,016,316.05 |
| 5-1 | NYCDF | $166,908.74 |
| 6-1 | Water Board | $3,997.78 |
| 7-1 | Approved Oil | $1,105.98 |

6. I am in the process of reviewing the claims asserted by the Secured Creditors. At this time, I am not able to acknowledge whether the Secured Creditors have an interest in the Assets that is valid, perfected, and undisputed.

7. Since my appointment, I have worked diligently to review the Debtor's records, inspect and evaluate the Assets, and analyze potential options for the Debtor to address the claims asserted by creditors in the case (the "**Claims**"). In doing so, I have held discussions with the Lender, the U.S. Trustee, and Ms. Mortimer regarding the Claims and how to maximize the recovery of stakeholders in this Chapter 11 case.

8. I determined that the interests of the Debtor's estate and the stakeholders in this Chapter 11 case would be best served by selling the Assets. The Debtor has carried a heavy debt load since mortgaging the Real Property and allowed significant tax debts to accrue prior to the Petition Date. Thus, a sale of the Assets is the best means to maximize the value of the Assets.

9. The sale of the Assets is the primary means for addressing not only the claims of the Secured Creditors, but all of the obligations of the Debtor and the Debtor's estate, including the professional fees incurred in this case, tax obligations from the sale of the Assets, and the priority and general unsecured claims asserted in this case.

10. On September 18, 2020, the Bankruptcy Court entered the *Order Under Bankruptcy Code §§ 105, 363, 365 and 1146 and Bankruptcy Rules 6004 and 6006; (1) Authorizing and Approving Terms and Conditions of Sale of Debtor's Assets Subject to Higher or Better Offers, Free and Clear of All Liens, Claims and Encumbrances; (2) Establishing*

*Procedures to Confirm Highest or Best Offer Received at Sale; (3) Approving Form, Time and Scope of Notice of Sale; and (4) Granting Related Relief* [ECF No. 162] (the "**Bidding Procedures Order**")[2] establishing the bidding procedures and terms and conditions of the sale of the Assets. Currently, an auction of the Assets (the "**Auction**") is scheduled for December 9, 2020, and a hearing to approve the sale of the Assets to the successful bidder at the auction is scheduled for December 17, 2020.

11.     The Bidding Procedures Order provides:

> At any time prior to the Auction, the Chapter 11 Trustee, with reasonable consent of the Lender, may select a Bidder to act as a stalking horse bidder in connection with the Auction (the "**Stalking Horse Bidder**") and enter into a purchase agreement with such Stalking Horse Bidder (the "**Stalking Horse Agreement**"), which shall be subject to higher and better offers at the Auction, to establish the minimum bid for the Assets at the Auction. The Chapter 11 Trustee also reserves the right, with reasonable consent of the Lender, and subject to its rights under 11 U.S.C. § 363(f), to (i) provide a breakup fee (the "**Breakup Fee**") of a maximum amount of three percent (3%) of the proposed purchase price under such Stalking Horse Agreement payable to the Stalking Horse Bidder from the proceeds of the Sale, and (ii) agree to reimburse reasonable and documents out-of-pocket fees and expenses not to exceed $25,000 (the "**Expense Reimbursement**" and with the Breakup Fee, collectively, the "**Bid Protections**") to the extent the Chapter 11 Trustee determines, in her sole discretion and as a matter of her reasonable business judgment, that provision of such Bid Protections is likely to maximize the value of the Assets.

Bidding Procedures Order, ¶ 10.

12.     As of the Date of this Motion, the Brokers have shown the Property to no less than eighty (80) prospective bidders, including representatives of PGI and the Lender. The prospective bidders have proposed certain bids and terms to the Brokers for the purchase of the Assets. I reviewed these proposals with the Brokers and found the offer presented by PGI to be the current highest and best offer for the Assets, which includes, amongst other things, a

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

proposed purchase price of $3,100,000 for the Assets, payment of the Buyer's Premium, and acceptance of the Assets subject to the lease of the tenant in Unit F of the Property.

13.    On or about November 17, 2020, I presented the terms of PGI's proposal to the Lender and began discussions with the Lender regarding the selection of a Stalking Horse Bidder. The Lender refused to consent to allowing PGI serve as the Stalking Horse Bidder, asserting the proposed bid was too low and that the Lender would be interested in serving as the Stalking Horse Bidder.

14.    On November 23, 2020, the Chapter 11 Trustee filed the *Complaint for a Declaratory Judgment, to Avoid and Recover Transfers, and to Disallow Claims* (the "**Trustee's Complaint**") to initiate adversary proceeding no. 20-01322 (the "**Adversary Proceeding**"). Through the Trustee's Complaint, I seek, amongst other things, a declaratory judgment finding the loan transactions between the Debtor and the Lender to be void, to avoid the Foreclosure Judgment as a preferential transfer, and to disallow the Lender's claim in its entirety or to reclassify the Lender's claim as a general unsecured claim. A true and correct copy of the Trustee's Complaint is attached hereto as **Exhibit A** and incorporated herein by reference as if set forth at length.

15.    On November 25, 2020, the Lender proposed to serve as the Stalking Horse Bidder with an effective offer of $3,130,000 (the "**Lender's Bid**"). The Lender's Bid consisted, in part, of a credit bid relying on the Lender's secured claims.

16.    I discussed both the proposal by PGI as well as the Lender's Bid with the Brokers, my counsel, and the other professionals engaged in this case. After fully considering the competing proposals, I concluded that PGI's proposal to serve as the Stalking Horse Bidder remained the highest and best offer for the Debtor's estate. This was due, in part, to the potential

26274164v.1

chilling effect on additional bidding at the Auction if the Lender served as the Stalking Horse Bidder.

17.     Thereafter, the terms and conditions of the bid proposed by PGI were formalized between PGI and myself, on behalf of the Debtor's estate, in the Purchase and Sale Agreement dated December 4, 2020 (the "**PSA**").  A copy of the PSA is attached hereto as **Exhibit B**.  In connection with the approval of the PSA, I seek approval of the Bid Protections provided for in the Bidding Procedures Order.  Pinetree has expressed its unwillingness to commit to hold open its offer to purchase the Assets unless the Chapter 11 Trustee is authorized to provide the Bid Protections.

18.     Apart from the estimation of the Lender's Claim and the Lender's refusal to provide consent for the Stalking Horse Bidder selected by me, the relief requested by this Motion is consistent with the procedures implemented in connection with the Bidding Procedures Order.

19.     Upon information and belief, there are a number of factual issues that are not truly disputed by either the Lender or myself, including:

a.     On or about July 29, 2009 (the "**Dissolution Date**"), the Debtor was dissolved by the State of New York pursuant to section 203-a of the New York Tax Laws, by the proclamation of the Secretary of State for the State of New York published on July 29, 2009.

b.     Prior to August 24, 2015, Ms. Mortimer created a new corporation, 60 91st Street Corporation (the "**New Corp.**") to operate and manage the Property.

c.     The Lender filed a proof of claim asserting a secured claim of $3,016,316.05, which was docketed as Claim 2-1 (the "**Lender's POC**").  A true and correct copy of the Lender's POC is attached hereto as **Exhibit C**.

d. The Lender's POC states the basis for perfection of the secured claim is a "Mortgage Note" and attached to the Lender's POC is a copy of the Foreclosure Judgment, the Consolidated Note (as defined in the Trustee's Complaint), and the Last Mortgage (as defined in the Trustee's Complaint).

e. The Last Mortgage purports to secure obligations for a "note signed by [the Debtor] and dated September 2016"; however, the Consolidated Note is dated October 3, 2016 and the Lender did not attach a September 2016 Note (as defined in the Trustee's Complaint) with the Lender's POC.

f. The Lender obtained the Foreclosure Judgment in the state court foreclosure action by filing a complaint (the "**Foreclosure Complaint**") that misrepresented the Debtor's corporate existence and ability to do business under the laws of the State of New York. Foreclosure Complaint, ¶ 1. A true and correct copy of the Foreclosure Complaint is attached as Exhibit C to the Trustee's Complaint.

g. The Foreclosure Complaint did not include a copy of the September 2016 Note (as defined in the Trustee's Complaint).

h. The Foreclosure Judgment was timely appealed and that appeal was stayed pursuant to section 362(a) of the Bankruptcy Code.

20. The Lender is a sophisticated party, charged with the knowledge of the Debtor's dissolution and the laws governing that dissolution, and had the means to determine the status of the Debtor's corporate existence prior to entering into the Loan Documents. Upon information and belief, the Lender obtained a title search prior to entering into the loan transactions with the Debtor and the results of that search failed to identify that the Debtor was dissolved as of the Dissolution Date. Upon further information and belief, the Lender informed the title company

that conducted the title search of this issue and the title company admitted to failing to identify the dissolution of the Debtor in their search.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        December 4, 2020

                                      _/s/ Heidi J. Sorvino_____
                                      Heidi J. Sorvino, Esq.
                                      WHITE AND WILLIAMS LLP

26274164v.1