**Exhibit C**

(Lender's POC)

**Fill in this information to identify the case:**

Debtor 1    60 91st Street Corp.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of New York

Case number   20-10338-scc

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

| | | |
|---|---|---|
| **1. Who is the current creditor?** | 2386 Hempstead, Inc. | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Terenzi & Confusione, P.C.
Name

401 Franklin Avenue, Suite 300
Number    Street

Garden City     NY     11530
City      State      ZIP Code

Contact phone   631-812-4502

Contact email   rterenzi@tcpclaw.com

Where should payments to the creditor be sent? (if different)

2386 Hempstead, Inc.
Name

45 Glen Cove Road
Number    Street

Greenvale     NY     11548
City      State      ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____3,016,316.05_. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** Mortgage Note

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $___3,016,316.05

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) 9.000 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | | | |
|---|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | | |

☐ Yes. *Check one:*                                                                                          **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                    $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).           $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).                                                                $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).            $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).               $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.              $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  02/27/2020
                  MM / DD / YYYY

\s\ Ronald M. Terenzi
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Ronald | M. | Terenzi |
| | First name | Middle name | Last name |
| Title | Attorney for 2386 Hempstead, Inc. | | |
| Company | Terenzi & Confusione, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 401 Franklin Avenue, Suite 300 | | |
| | Number          Street | | |
| | Garden City | NY | 11530 |
| | City | State | ZIP Code |
| Contact phone | 516-812-4502 | Email | rterenzi@tcpclaw.com |

# __Proof of Claim Calculations__

<u>Amounts as granted in Judgment dated November 21, 2019:</u>

| | |
|---|---|
| Amount Due from the Referee Report | $2,691,415.40 |

Note rate interest from 4/30/2019 to entered judgment
on 11/21/19 at 24.99% (205 days @ $1,189.08)          $   243,761.40
Cost and disbursements - $1590.00
Attorney fees in judgment - $20,000                       $     21,590.00
Total per judgment                                       $2,956,766.80

12/28/2019 - NY Law Journal publication Notice of Sale    $     4,869.00
Post judgment to petition date at 9% ($729.07)           $     54,680.25

Total amount due as of 2/20/2020                         $3,016,316.05*

*Interest accrues at 9% together with any additions to attorney fees and costs accrued during
Bankruptcy proceedings.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**2386 HEMPSTEAD, INC.,**

Plaintiff

-against-

**NOTICE OF ENTRY**

Index No. 850274/2017

**60 91st STREET CORP.**

Defendants

Defendant(s).

SIRS:

PLEASE TAKE NOTICE that the within is a true copy of a Decision on Motion, and

Judgment of Foreclosure & Sale granted by HON. ARLENE P. BLUTH on November 21, 2019

and entered duly entered in the office of the clerk of the within named court on December 9,

2019.

Dated:   Ronkonkoma, NY
         December 13, 2019

Yours, etc.

THE WOLINSKY LAW GROUP, P.C.
*Attorneys for Plaintiff*
*Office and Post Office Address*
160-2 Remington Boulevard
Ronkonkoma, NY 11779
(631) 588-2900

C:\Users\swole\Desktop\00345-305687914\alan\Desktop\Documents\Grodsky\Foreclosures\Mortimer\Judgement\notice of entry.wpd

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM    INDEX NO. 850274/2017
NYSCEF DOC. NO. 109    RECEIVED NYSCEF: 12/09/2019

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. ARLENE P. BLUTH    PART    IAS MOTION 32

_Justice_

------------------------------------------------------X

2386 HEMPSTEAD, INC.

Plaintiff,

- v -

60 91ST STREET CORP.,

Defendant.

------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 850274/2017 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION, JUDGMENT OF FORECLOSURE AND SALE**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 102, 103

were read on this motion to/for          JUDGMENT - FORECLOSURE & SALE

The motion by plaintiff for a judgment of foreclosure and sale is granted. The cross-motion by defendant to vacate is denied.

**Background**

In this foreclosure action, plaintiff moves to confirm the report of Thomas Kleinberger, which found that plaintiff is due $2,691,415.40 as of April 30, 2019.

In opposition and in support of its motion to vacate, defendant claims that plaintiff has unclean hands because it purportedly paid itself monies from the proceeds of the loan to which it was not entitled. Defendant also alleges that plaintiff changed the agreed-upon terms of the loan agreement at the closing. Defendant's principal contends that although she was represented by counsel at the closing and that she signed the subject agreement, she was suffering from distress due to her mother's illness. She claims she now knows the documents she signed do not represent the negotiations she previously had with the lender.

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM

NYSCEF DOC. NO. 109

INDEX NO. 850274/2017

RECEIVED NYSCEF: 12/09/2019

Defendant claims there is excusable default because the building had no mail carrier at the time the Secretary of State mailed the summons and complaint and it has a meritorious defense based on plaintiff's purported fraudulently inducing it to sign the loan.

In reply and in opposition to the cross-motion, plaintiff emphasizes that defendant was represented by counsel throughout the loan agreement process and explains in detail why defendant received approximately $87,000 from the loan. According to plaintiff, monies were deducted for unpaid interest owed on the first mortgage, for closing costs, and another $10,000 was held in escrow because defendant did not come to the closing with a proper insurance policy.

**Discussion**

The Court grants the motion and denies defendant's cross-motion. As an initial matter, defendant did not establish a reasonable excuse for failing to appear. Defendant did not claim that plaintiff failed to properly effectuate service with the Secretary of State. Rather, it blames the post office for its mail carrier obligations. However, the Court cannot ignore the fact that *defendant owns* the building— if the mail service was lacking, then defendant's principal should have taken steps to fix the problem. The affidavit of defendant's principal is silent on what she did to alleviate the problem, when she found out about it or how long this problem existed prior to service through the Secretary of State. It is not the obligation of plaintiff or the Secretary of State to ensure that the mail service at defendant's building is operating properly. Here, the papers were served to the correct address and defendant merely complains she never got them. That is not enough to establish a reasonable excuse for not appearing.

Even if defendant could establish a reasonable excuse, it did not show a meritorious defense. The principal for defendant appears to claim that she does not like the agreement that

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM    INDEX NO. 850274/2017
NYSCEF DOC. NO. 109    RECEIVED NYSCEF: 12/09/2019

she signed. While the Court appreciates that she may have been preoccupied with her mother's illness, that is not a valid defense to this action, especially where it is undisputed that she was represented by counsel at the closing. Defendant cannot get out of an agreement because its principal chose to read the terms after signing it and decided she doesn't like them or that they might have been different from previous discussions with plaintiff. That is presumably why defendant had counsel at the closing.

And there is no basis to find that plaintiff fraudulently induced defendant's principal into signing the loan agreement. In her affidavit, she admits that she signed a previous promissory note for $1.4 million in 2015 and that when this loan neared maturity, she sought out new financing. In other words, defendant wanted additional money from plaintiff. There is no basis to find that defendant was coerced or fraudulently induced into signing the agreement. Rather, it appears she sought out additional financing and received it.

Accordingly, it is hereby

ORDERED and ADJUDGED that the motion by plaintiff for a judgment of foreclosure and sale and to confirm the referee's report is granted; and it is further

ORDERED that the cross-motion by defendant is denied; and it is further

ORDERED that the mortgaged property described in the complaint and as described in this judgment, or such part thereof as may be sufficient to discharge the mortgage debt, the expense of sale and the costs of this action as provided in the RPAPL be sold within 90 days of this judgment, in one parcel, at a public auction at the New York County Courthouse located at 60 Centre Street, New York, New York under the direction of **Thomas Kleinberger, Esq.**, who is appointed Referee for this purpose; and it is further

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM

NYSCEF DOC. NO. 109

INDEX NO. 850274/2017

RECEIVED NYSCEF: 12/09/2019

ORDERED that the Referee shall give public notice of the time and place of sale in accordance with RPAPL 231(2) in the *New York Law Journal*; and the referee need not conduct the sale unless plaintiff shall provide the referee with proof of publication of the notice of sale, and if the sale is adjourned due to plaintiff's failure to provide such proof, then said adjournment shall not be considered at the referee's request; and it is further

ORDERED that by accepting this appointment the Referee certifies that she/he is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2 (c) ("Disqualifications from appointment"), and §36.2 (d) ("Limitations on appointments based upon compensation"), and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

ORDERED that the Referee is prohibited from accepting or retaining any funds for herself/himself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED that the Referee shall conduct the foreclosure sale only if Plaintiff, its successors and/or assignees or its representatives is present at the sale or the Referee has received a written bid and Terms of Sale from Plaintiff, its successors and/or assigns, or its representatives; and it is further

ORDERED that if the Referee cannot conduct the sale within 90 days of the date of this judgment, plaintiff must make a motion to extend the time to sell the subject property explaining the reasons for the delay; and it is further

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM    INDEX NO. 850274/2017

NYSCEF DOC. NO. 109

RECEIVED NYSCEF: 12/09/2019

ORDERED that at the time of sale the Referee may accept a written bid from the Plaintiff or the Plaintiff's attorney, just as though Plaintiff were physically present to submit said bid; and it is further

ORDERED that the Referee shall accept the highest bid offered by a bidder who shall be identified upon the court record, and shall require that the successful bidder immediately execute Terms of Sale for the purchase of the property, and pay to the Referee in cash, certified check or bank check, ten percent (10%) of the sum bid, unless the successful bidder is Plaintiff, in which case no deposit against the purchase process shall be required and it is further

ORDERED that notwithstanding the previous paragraph, the Referee shall have the right to refuse cash payments and require a bank or certified check from the successful bidder and the Referee shall be entitled to qualify bidders and require bidders to show proof of funds before or during the auction; and it is further

ORDERED that in the event the first successful bidder fails to execute the Terms of Sale or fails to immediately pay the ten percent (10%) deposit as required, the property shall be immediately reoffered at auction on the same day; and it is further

ORDERED the Referee shall deposit the down payment and proceeds of sale, as necessary in an FDIC-insured bank where the Referee has an account for that purpose in accordance with CPLR 2609; and it is further

ORDERED that after the balance of the purchase price is paid or credited and the property is sold, the Referee shall execute a deed to the purchaser in accordance with RPAPL 1353 and the terms of sale (which shall be deemed a binding contract); and it is further

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM    INDEX NO. 850274/2017
NYSCEF DOC. NO. 109    RECEIVED NYSCEF: 12/09/2019

ORDERED that in the event a party other than Plaintiff becomes the purchaser at the sale, the closing of title shall be held no later than 30 days after the date of such sale; and it is further

ORDERED that, pursuant to RPAPL 1353(1), if Plaintiff (or its affiliate as defined in paragraph [a] of subdivision one of section six-1 of the banking law) is the purchaser, the property shall be placed back on the market for sale or other occupancy within 180 days of the execution of the deed of sale or within 90 days of construction, renovation, or rehabilitation of the property, provided that such construction, renovation or rehabilitation proceeded diligently to completion, whichever comes first, provided that this court grants an extension upon a showing of good cause; and it is further

ORDERED that the Referee, after receiving the proceeds of the sale, shall pay (from the proceeds) the taxes, assessments, sewer rents, or water rates, which are, or may become, liens on the property in accordance with their priority according to law with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED that the Referee shall deposit the balance of the proceeds from the sale in his or her own name as Referee in an FDIC-insured bank where the Referee has an account for that purpose and shall make the following payments in accordance with RPAPL 1354:

1. The Referee's fees for conducting the sale, which are $1,100. Plaintiff shall also compensate the Referee in the sum of $350 for each adjournment or cancellation made on less than two business days' notice unless the Referee caused the delay.

2. All taxes, assessments and water rates that are liens upon the property and monies necessary to redeem the property from any sales for unpaid taxes, assessments or water rates and any other amounts due in accordance with RPAPL 1354(2). The

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM    INDEX NO. 850274/2017

NYSCEF DOC. NO. 109    RECEIVED NYSCEF: 12/09/2019

purchaser shall be responsible for interest and penalties accrued *after* the sale. The Referee shall not be responsible for the payment of penalties or fees pursuant to this appointment. The purchaser shall hold the Referee harmless from any such penalties or fees assessed;

3. The expenses of the sale and the advertising expenses as shown on the bills presented and certified by the Referee to be correct, copies of which shall be annexed to the report of sale.

4. The Referee shall also pay to the Plaintiff or its attorneys the following:

   a. Amount Due from the Referee's Report: $2,691,415.40 with interest at the note rate from April 30, 2019 until entry of judgment, together with any advances as provided for in the note and mortgage which Plaintiff had made for taxes, insurance, principal, and interest and any other charges due to prior mortgages or to maintain the property pending consummation of the foreclosure sale, not included in the computation upon presentation of receipts for said expenditures to the Referee, and then with interest from the date of entry of this judgment at the statutory rate until the date the deed is transferred

   b. Costs and Disbursements: $1590.00 (to be filled in by the Clerk) to Plaintiff for costs and disbursements in this action with interest at the statutory judgment rate from the date of entry of this judgment;

   c. The Court declines to award additional allowance.

   d. Attorneys' Fees: $20,000.00 is hereby awarded as reasonable attorneys' fees with interest at the statutory judgment rate from the date of entry of this judgment.

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM

NYSCEF DOC. NO. 109

INDEX NO. 850274/2017

RECEIVED NYSCEF: 12/09/2019

5.  Surplus monies from the sale shall be paid into Court by the Referee within five days after receipt in accordance with RPAPL 1354(4); and it is further

ORDERED that if Plaintiff is the purchaser of the property, or in the event that the rights of the purchasers at the sale and the terms of sale under this judgment shall be assigned to or be acquired by Plaintiff, and a valid assignment is filed with the Referee, the Referee shall not require Plaintiff to pay in cash the entire amount bid at sale, but shall execute and deliver to Plaintiff or its assignee, a deed or deeds of the property sold upon the payment to said Referee of the amounts specified as 1, 2, and 3 above, and the Referee shall allow Plaintiff to pay the amounts specified in 2 and 3 above when it is recording the deed; that the balance of the bid, after deducting the amounts paid by Plaintiff, shall be applied to the amount due to Plaintiff as specified in 4 above; that Plaintiff shall pay any surplus after applying the balance of the bid to the Referee, who shall deposit it in accordance with 5 above; and it is further

ORDERED that all expenses of recording the Referee's deed, including real property transfer taxes, which is not a lien upon the property at the time of sale, shall be paid by the plaintiff from the sale proceeds; and it is further

ORDERED that Plaintiff may seek to recover a deficiency judgment in accordance with RPAPL 1371 if applicable;

ORDERED that if the property is sold in one parcel in "as is" physical order and condition, subject to any condition that an inspection of the property would disclose; any facts that an accurate survey of the property would show; any covenants, restrictions, declarations, reservations, easements, right of way, and public utility agreements of record, if any; any building and zoning ordinances of the municipality in which the mortgaged property is located and possible violations of same; any rights of tenants or persons in possession of the subject

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM    INDEX NO. 850274/2017
NYSCEF DOC. NO. 109                                            RECEIVED NYSCEF: 12/09/2019

property; prior liens of record, if any, except those liens addressed in RPAPL 1354, any equity of

redemption of the United States of America to redeem the property within 120 days from the

date of sale, any rights pursuant to CPLR 317, 2003 and 5015 or any appeal of the underlying

action or additional litigation brought by any defendant or its successor or assignee contesting

the validity of this foreclosure; and it is further

ORDERED that the purchaser be let into possession of the property upon production in

hand of the Referee's Deed or upon personal service of the Referee's deed in accordance with

CPLR 308; and it is further

ORDERED that defendants in this action and persons claiming through them and any

person possessing a junior interest in the property after the Notice of Pendency was filed are

barred and foreclosed of all right, claim, lien, title, and interest in the property after the sale of

the mortgaged property; and it is further

ORDERED that within **14 days** after completing the sale and executing the proper

conveyance to the purchaser, the Referee shall file with the clerk a report under oath of the

disposition of the proceeds of the sale and upload the report to NYSCEF if it is an e-filed case;

and it is further

ORDERED that if the purchaser or purchasers at said sale default upon the bid or terms

of sale, the Referee may place the property for resale without prior application to this Court

unless Plaintiff's attorney elects to make such an application; and it is further

ORDERED that Plaintiff shall serve a copy of this judgment with notice of entry upon

the owner of the equity of redemption, any tenants named in this action, and any other parties

entitled to service, including the Referee appointed herein; and it is further

850274/2017  2386 HEMPSTEAD, INC. vs. 60 91ST STREET CORP.                    Page 9 of 10
Motion No. 003

ORDERED that nothing herein shall be deemed to relieve Plaintiff of any obligation imposed by RPAPL 1307 or 1308 to secure and maintain the property until ownership of the property has been transferred and the deed duly recorded; and it is further

ORDERED that when the Referee files a report of sale, she or he shall also file a Foreclosure Action Surplus Monies Form and also upload this document to NYSCEF if an e-filed case; and it is further

ORDERED that plaintiff shall upload the notice of sale to NYSCEF at least 21 days, before the sale and the Referee and **plaintiff shall e-mail SFC-Foreclosures@nycourts.gov** at least 21 days before the auction date so the auction may be placed on the auction calendar; IF THE AUCTION IS NOT ON THE CALENDAR, then *the auction will not go forward*; and it is further

ORDERED that, without further order of the Court, the referee shall be entitled to an additional fee of $950 for conducting and attending a closing with a purchaser other than plaintiff, plus, if such a closing is scheduled for the referee's conference room, then the referee shall be entitled to a reasonable fee for use thereof, without further order of the Court.

The property is commonly known as 60 West 91st Street, New York, NY 10024. Plaintiff did not include a legal description in its proposed judgment (NYSCEF Doc. No. 61).

**11·21·19**
DATE

ARLENE P. BLUTH, J.S.C.

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
| APPLICATION: | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| CHECK IF APPROPRIATE: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| | | INCLUDES TRANSFER/REASSIGN | | | x FIDUCIARY APPOINTMENT | | REFERENCE |

# FILED

CLERK

850274/2017  2386 HEMPSTEAD, INC. vs. WD 91ST STREET CORP.
Motion No.  003

DEC 9 2019

Page 10 of 10

COUNTY CLERK'S OFFICE
NEW YORK

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM

NYSCEF DOC. NO. 109

INDEX NO. 850274/2017

RECEIVED NYSCEF: 12/09/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------

2386 HEMPSTEAD, INC.,

Plaintiff

-against-

60 91ˢᵗ STREET CORP.

Defendants

Defendant(s).
--------------------------------------------------------------------

**BILL OF COSTS**

Index No. 850274/2017

Justice:
Hon. ARLENE P. BLUTH

## COSTS

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ *1590·00*

DEC - 9 2019

*(signature)*
CLERK

| | |
|---|---|
| Costs before Note of Issue(CPLR 8201(1)) | $  200.00 |
| Costs after proceedings after note of issue filed but before trial | |

Additional Allowance (CPLR§8302(a)) on ⁽ᵇ⁾
| | |
|---|---|
| 10%.....................$ ~~200.00~~ *20·00* | |
| 5%.......................$ ~~800.00~~ *40·00* | |
| 2%....................$ ~~2,000.00~~ *40·00* | |
| 1%....................$ ~~5,000.00~~ *50·00* | |

TOTAL COSTS
*#150·00* $ ~~8,000.00~~
$ ~~8,200.00~~

## DISBURSEMENTS

| | |
|---|---|
| Fee for Index number(CPLR 8018(a) | # *400·00* $ ~~235.00~~ |
| Referee's Fees(CPLR 8301(a)(1), 8003, 8001(d) and 4321) | $  350.00 |
| Paid for Searches (CPLR 8301(a)(10) | # *250·00* $ ~~489.94~~ |
| Serving copy summons & Complaint (CPLR 8301©) and 8301(d) | $  *55·00* ~~95.00~~ |
| Request for Judicial Intervention | $  95.00 |
| Motion Expenses(CPLR 8301(b) 2@ $45.00 | $  90.00 |
| Referee fee to sell | $ pending |
| Fees for Publication(CPLR 8301(a)(3)) | $ pending |
| TOTAL DISBURSEMENTS | $ ~~1,354.94~~ *1590·00* |

C:\Users\awole\Desktop\00345-305687914\alan\Desktop\Documents\Grodsky\Foreclosures\Mortimer\Judgment\bill of costs.wpd

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM

NYSCEF DOC. NO. 109

INDEX NO. 850274/2017

RECEIVED NYSCEF: 12/09/2019

## SUMMARY

| | |
|---|---|
| Costs | $ 8,200.00 |
| Disbursements | $ 1,354.94 |
| TOTAL | $ 9,554.94 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------

2386 HEMPSTEAD, INC.,

Plaintiff

-against-

60 91ˢᵗ STREET CORP.

Defendants

-------------------------------------------------------

**AFFIRMATION**

Index No. 850274/2017
Justice:
Hon. ARLENE P. BLUTH

ALAN M. WOLINSKY, an attorney duly admitted to practice law in the courts of the State of New York, under penalty of perjury duly affirms and says:

1. That he is a shareholder of The Wolinsky Law Group, P.C. attorney of record for 2386 Hempstead, Inc., the mortgagee in this foreclosure proceeding.

2. The foregoing disbursements have been or will be necessarily incurred in this action and are reasonable in amount.

3. That each of the persons named as witnesses attended as a witness on the trial the number of days set opposite their names and each of these persons resided the number of miles set opposite their names, from the place of trial and each of these persons necessarily traveled the number of miles so set opposite their names in traveling to, and the same distance returning from the same place of trial.

4. That any copies of documents or papers as charged herein were actually and necessarily obtained for use.

DATED: May 13 , 2019  Ronkonkoma, New York

ALAN M. WOLINSKY
THE WOLINSKY LAW GROUP, P.C.
160-02 Remington Boulevard
Ronkonkoma, New York 11779
(631)588-2900

C:\Users\awole\Desktop\00345-3056B7914\alan\Desktop\Documents\Grodsky\Foreclosures\Mortimer\Judgemen\bill of costs.wpd

FILED: NEW YORK COUNTY CLERK 12/09/2019 10:13 AM

NYSCEF DOC. NO. 109

INDEX NO. 850274/2017

RECEIVED NYSCEF: 12/09/2019

Index No. 850274/2017

Order and Judgment

**FILED**

DEC 09 2019

AT          10:08   A.M.

N.Y., CO. CLK'S OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 850274/2017

2386 HEMPSTEAD, INC.,

                    Plaintiff

                              -against-

60 91st STREET CORP.

                    Defendants

---

**Decision on Motion and Judgment of Foreclosure and Sale with Notice of Entry**

---

**THE WOLINSKY LAW GROUP., P.C.**
*Attorneys for Petitioner*
*Office and Post Office Address, Telephone*
**160-02 Remington Boulevard**
**Ronkonkoma, New York 11779**
**(631) 588-2900**

_____

ALAN M. WOLINSKY

Signed Pursuant to NYCRR§ 130-1.1-a

---

To:   60 91st Street Corp.


Kimberly Mortimer                    Service of a copy of the within is hereby admitted.
60 West 91st Street
New York, NY 10024                   Dated:_____19


_____

Loan #:

# CONSOLIDATED
## INTEREST-ONLY PERIOD FIXED RATE NOTE

October 3, 2016                    Melville,                    New York
[Date]                         [City]                       [State]
60 West 91ˢᵗ St., New York, NY 10024
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $1,700,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **2386 Hempstead Inc.** I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.     INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.000%.**
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.     PAYMENTS**
    **(A)     Time and Place of Payments**
I will make a payment every month. This payment will be for interest only for the first 12 months.
I will make my monthly payment on the first day of each month beginning on **November 3, 2016.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on October 3, 2017, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 45 Glen Cove Rd., Greenvale, NY 11548 or at a different place if required by the Note Holder.

    **(B)     Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$4,250.00** for the first 12 months of this Note. The Note Holder will notify me prior to the date of change in monthly payment. **The borrower shall have the option to pay only $3,500.00 per month for the first 12 months of this Note. If the borrower elects this reduced payment, the shortage of $750.00 per month shall be added to the payoff amount that will be due on October 3, 2017.**

**4.     BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**5.     LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.     BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A)     Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.000%** of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B)     Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C)     Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D)     No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E)     Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail, return receipt requested, to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.    **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11.    **DEFAULT**

In the event of any acceleration of the due date of any amount or amounts due under this note by reason of the Maker's failure to comply with the terms, covenants and conditions of this note, or on and after the maturity date set forth herein, whichever occurs first, it is agreed by the parties that interest on such amounts shall be computed at the maximum legal rate from the date of acceleration or maturity until the entire debt evidenced hereby is satisfied whether or not, notice of acceleration is delivered to Maker; in the event an action is instituted to collect the debt herein or to foreclose under the terms of the Mortgage and Security Agreement, or to foreclose any mortgage or mortgages given now or hereafter as collateral security for this indebtedness, interest on the amounts due hereunder shall be computed at the maximum legal rate from the date of acceleration or maturity of the indebtedness evidenced hereby until the entire debt is paid in full. All such interest shall be secured by the Mortgage and Security Agreement. Maker agrees that the time of repayment of the debt when due as hereinabove stated is of unique and specific importance and financial necessity to the holder of this note and the Mortgage and Security Agreement, and time is hereby made of the essence. It is further understood that the foregoing provisions of this paragraph do not constitute a consent or agreement on the part of the holder of this note to extend or postpone the time of such payment beyond the present date of maturity hereof. If any action is instituted to collect the debt herein or to foreclose the Mortgage and Security Agreement, or to foreclose under the terms of the Mortgage and Security Agreement or any collateral mortgage collaterally securing the debt herein whether granted now or at any future time, the Maker, and any guarantor, endorser or surety hereby severally agree to pay the reasonable attorney's fee incurred by the holder of this note for each such action, together with all costs and disbursements incurred in connection therewith, which attorney's fees, costs and disbursements shall be added to the amount due hereunder.

In no event shall the undersigned be charged more than the highest rate of interest which may be lawfully charged by the holder hereof and paid by the undersigned on the indebtedness evidenced hereby. It is therefore, agreed that if at any time interest on the indebtedness evidenced hereby would otherwise exceeds the highest lawful rate, the rate shall be automatically reduced and only such highest lawful rate will be paid by the undersigned. Should any amount be paid by the undersigned in excess of such highest lawful amount, such excess shall be deemed to have been paid in reduction of the principal balance hereof.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

60 91st Street Corp.

_____(Seal)
By: Kimberly Mortimer

_____(Seal)

_____(Seal)

_____(Seal)

Loan #:

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY
## INSTRUMENT

This BALLOON PAYMENT RIDER ("Rider") is made this **October 3, 2016,** and amends a Note in the amount of **$1,700,000.00** (the "Note" made by the person(s) who sign below ("Borrower") to **2386 Hempstead Inc.** and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated and given by Borrower to secure repayment of the Note.

In addition to the agreements and provisions made in the Note and the Security Instrument, both Borrower and Lender further agree as follows:

**IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON    (THE "MATURITY DATE").   BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND INTEREST THEN DUE.   THIS IS CALLED A "BALLOON PAYMENT".    THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.**

_____
Witness

_____
Witness

**60 91ˢᵗ Street Corp.**

_____
**By: Kimberly Mortimer**

Loan #:

# PREPAYMENT ADDENDUM TO NOTE

Date:    **October 3, 2016**

Borrower(s):    **60 91ˢᵗ Street Corp.**

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this **October 3, 2016** and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of **2386 Hempstead Inc.** ("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 4 of the Note is amended to read in its entirety as follows:

**4.      BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase. If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.
If within six (6) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to three (3 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

Date:  **October 3, 2016**

**60 91ˢᵗ Street Corp.**

By: Kimberly Mortimer

*[Sign original only]*

STATE OF NEW YORK        )
                         )ss:
COUNTY OF SUFFOLK        )

On **October 3, 2016**, before me, the undersigned, personally appeared **Kimberly Mortimer**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

JAMES KOCORIS
NOTARY PUBLIC - STATE OF NEW YORK
NO. 02KO6020525
QUALIFIED IN NASSAU COUNTY
Commission Expires March 1, 20__

PAY TO THE ORDER OF

WITHOUT RECOURSE
2386 Hempstead Inc.

_____

Loan #:
After Recording Return To:
**MOBERG & KOCORIS PC**
**150 Broadhollow Rd., Suite 320**
**Melville, NY 11747**

[Space Above This Line For Recording Data]

# C O N S O L I D A T E D    M O R T G A G E

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated **October 3, 2016**, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."** 60 91st Street Corp., whose address is 60 West 91st St, New York, NY 10024 sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."** 2386 Hempstead Inc. will be called "Lender." Lender is a corporation or association which exists under the laws of the State of . Lender's address is **45 Glen Cove Rd, Greenvale, NY 11548.**

**(D) "Note."** The note signed by Borrower and dated September  2016 will be called the "Note." The Note shows that I owe Lender **One Million Seven Hundred Thousand and 00/100 Dollars (U.S. $1,700,000.00 )** plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **November 3, 2017.**

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

**(I) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J) "Community Association Dues, Fees and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees and Assessments."

**(K) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" mean any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, and as defined in, paid under the coverage described, in Section 5): for (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

   (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

   (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

   (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

   (A) The Property which is located at **60 West 91st St., New York, NY 10024.** This Property is in **New York County.** It has the following legal description:

)

AS DESCRIBED IN SCHEDULE A ATTACHED HERETO AND MADE A PART HEREOF.

District:
Section:
Block:      **1204**
Lot:        **54**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.
I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:
   **1. Borrower's Promise To Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.
   Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.
   **2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.
   If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.
   Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.
   Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

(a) **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents, and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, and flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if the Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to the Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance polices covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for: such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance in force from time to time. Mortgage insurers may enter into agreements with other parties that change or modify their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance". It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lenders interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender.

If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement of this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right I will meet the following conditions:

(a)  I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)  I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)  I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)  I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances". "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup. An "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law: (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the

presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the asbestos and asbestos-containing materials on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under the Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:
(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promise to pay the Sums Secured when due, or if another default occurs under this Security Instrument.
(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.
(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**
[]     This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
[]     This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
[X]     This Security Instrument does not cover real property improved as described above.

Loan #:

## BALLOON PAYMENT RIDER TO NOTE AND SECURITY
## INSTRUMENT

This BALLOON PAYMENT RIDER ("Rider") is made this **October 3, 2016,** and amends a Note in the amount of **$1,700,000.00** (the "Note" made by the person(s) who sign below ("Borrower") to **2386 Hempstead Inc.** and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated and given by Borrower to secure repayment of the Note.

In addition to the agreements and provisions made in the Note and the Security Instrument, both Borrower and Lender further agree as follows:

**IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON (THE "MATURITY DATE"). BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT". THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.**

_____
Witness

_____
Witness

60 91st Street Corp.

_____
By: Kimberly Mortimer

Loan #:

# PREPAYMENT RIDER

Date:  **October 3, 2016**

Borrower(s):    **60 91st Street Corp.**

THIS PREPAYMENT RIDER (the "Rider") is made this **October 3, 2016**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of **2386 Hempstead Inc.** ("Lender").  The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at:

**60 West 91st St., New York, NY 10024**
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Agreement, Borrower and Lender further covenant and agree as follows:

A.    **PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**4.    BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.  If this Note provides for a variable interest rate or finance charge, and the interest rate or finance charge at any time exceeds the legal limit under which a Prepayment penalty is allowed, then the Note Holder's right to assess a Prepayment penalty will be determined under applicable law.

If within six (6) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to three (3 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

Date:  **October 3, 2016**

60 91st Street Corp.

_____
**By: Kimberly Mortimer**

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 9 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____

_____

60 91st Street Corp.

_____

By: Kimberly Mortimer

_____

_____

STATE OF New York)
                 )ss:
COUNTY OF Suffolk)

On October 3, 2016, before me, the undersigned, personally appeared **Kimberly Mortimer**    , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

Maria Tarasco
Notary Public - State of New York
NO. 01TA6073704
Qualified in Suffolk County
My Commission Expires April 29, 20 1 Y

NEW YORK -Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01     (page 9 of 9 pages)