WHITE AND WILLIAMS LLP
Amy E. Vulpio, Esq.
James C. Vandermark, Esq.
7 Times Square, Suite 2900
New York, NY 10036
(212) 244-9500
vulpioa@whiteandwilliams.com
vandermarkj@whiteandwilliams.com

*Counsel to Heidi J. Sorvino, Esq.,*
 *as the Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re:<br><br>60 91st Street Corp.,<br>      Debtor. | Chapter 11<br><br>Case No. 20-10338 (SCC) |
|---|---|

### DECLARATION OF HEIDI J. SORVINO IN SUPPORT OF
### THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS

I, Heidi J. Sorvino, hereby declare:

  1.  I am a partner in the law firm of White and Williams LLP and am admitted to practice before this Court. Pursuant to this Court's *Order Approving the Appointment of the Chapter 11 Trustee* [Doc. No. 28] (the "**Appointment Order**"), I am the duly appointed Chapter 11 trustee in the above-captioned case for 60 91st Street Corp. (the "**Debtor**").

  2.  Pursuant to Paragraph 6 of the *Order Under Bankruptcy Code §§ 105, 363, 365 and 1146 and Bankruptcy Rules 6004 and 6006; (1) Authorizing and Approving Terms and Conditions of Sale of Debtor's Assets Subject to Higher or Better Offers, Free and Clear of All Liens, Claims and Encumbrances; (2) Establishing Procedures to Confirm Highest or Best Offer Received at Sale; (3) Approving Form, Time and Scope of Notice of Sale; and (4) Granting*

*Related Relief* [ECF No. 162] (the "**Bidding Procedures Order**"),[1] I submit this Declaration in support of the sale of substantially all of the Debtor's asset (the "**Assets**").

3. All of the facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by the professionals engaged by me in this chapter 11 bankruptcy case, including members of Rosewood Realty Group ("**Rosewood**") and Maltz Auctions, Inc. ("**Maltz**" and together with Rosewood, collectively, the "**Brokers**"). If called upon to testify, I could and would testify competently to the facts set forth in this declaration.

4. On February 4, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). On April 30, 2020, this Court entered the Appointment Order for my appointment as the Chapter 11 trustee in the above-captioned case. Until my appointment, Kim Mortimer, as the Debtor's chief executive officer, operated the Debtor's business and managed its affairs as a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

5. The Debtor is the owner of the property located at 60 West 91st St., New York, NY 10024 (the "**Property**") which is an apartment building consisting of nine (9) units.

6. On August 18, 2020, the Bankruptcy Court entered the *Order Authorizing Employment of Maltz Auctions, Inc. and Rosewood Realty Group as Co-Real Estate Brokers for the Chapter 11 Trustee* [ECF No. 143] (the "**Broker's Retention Order**"), which authorized the Chapter 11 Trustee to engage the Brokers for purposes of marketing the Assets for sale, including the Property.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

7. On September 18, 2020, the Bankruptcy Court entered the Bidding Procedures Order establishing the bidding procedures and terms and conditions of the sale of the Assets.

**Marketing Efforts Prior to the Sale**

8. Even before the entry of the Broker's Retention Order, the Broker's inspected the Property and began evaluating how to market the Assets for the Sale. This included considering alternative uses for the Property, potential buyers that may consider purchasing the Assets, as well as the impact of the COVID-19 pandemic on the real estate market in Manhattan.

9. After their retention, the Brokers initiated an extensive process to market the Assets for the Sale to numerous likely prospective purchases. This process included utilizing their proprietary databases and market knowledge to identify a broad group of potential buyers and investors, preparing and sending "teasers" summarizing the Assets, and preparing and circulating marketing and diligence materials.

10. The Brokers' marketing efforts resulted in a number of interested parties becoming interested in the Property. In the approximately three (3) months since their engagement, the Brokers were able to show the Property to no less than eighty (80) prospective bidders, including Pinetree Group, Inc. ("**PGI**") and the Lender.

11. During the marketing of the Property, a number of the prospective bidders proposed certain bids and terms to the Brokers for the purchase of the Assets. I reviewed these proposals with the Brokers and found the offer presented by PGI to be the current highest and best offer for the Assets, which included, amongst other things, a proposed purchase price of $3,100,000 for the Assets, payment of the Buyer's Premium, and acceptance of the Assets subject to the lease of the tenant in Unit F of the Property.

**Report of the Sale**

12. On December 4, 2020, I caused the *Motion of the Chapter 11 Trustee Pursuant to Sections 105, 363, and 502(c) of the Bankruptcy Code for Order (I) Estimating the Claim of 2386 Hempstead, Inc. and (II) Approving Selection of Stalking Horse Bidder, Break-Up Fee and Expense Reimbursement, and Related Relief in Connection with the Sale of Substantially All of the Debtor's Assets* [ECF No. 2140] (the "**Stalking Horse Motion**") to be filed with the Court, through which I sought approval for PGI to serve as the Stalking Horse Bidder at the Auction. On December 8, 2020, the Bankruptcy Court held a hearing to address the Stalking Horse Motion and, at the conclusion of that hearing, approved PGI as the Stalking Horse Bidder.

13. Prior to the Auction, I received Qualification Documents from several Bidders. I anticipated there would be three (3) Qualified Bidders participating in the Auction, consisting of the Lender, PGI, and another party. The Qualification Documents were provided to counsel for the Lender prior to the Auction.

14. On December 9, 2020, the Brokers conducted the Auction pursuant to the Bidding Procedures Order through an online platform and via Zoom videoconferencing. I attended the Auction, which began at approximately 3:30 pm (prevailing Eastern Time). Only two (2) of the anticipated Qualified Bidders were represented at the Auction: the Lender and PGI. The Brokers opened the Auction with an opening bid of $3,100,000 from PGI, as the Stalking Horse Bidder. No other bids were received, so PGI was selected as the Successful Bidder. No Backup Bidder was selected.

15. In conclusion, after several months of marketing the Assets and conducting an Auction, I received a Successful Bid from PGI. As a result of the Successful Bid, PGI will

acquire the Assets after the approval of the Bankruptcy Court following the Sale Hearing, which is currently scheduled for December 17, 2020.

16. In my opinion, the Auction was effective in testing the market value of the Assets, the time period for marketing the Assets was adequate, and the outcome from the sale process yielded the highest and best market value for the Assets.

17. To the best of my knowledge, the Auction was conducted in a non-collusive, fair, and good-faith manner, and a reasonable opportunity was provided to any interested party to make a higher or otherwise better offer for the Assets. Further, I believe that the sale process maximized the value of the Assets for the Debtor's estate and for the benefit of all stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
December 11, 2020

    */s/ Heidi J. Sorvino*
    Heidi J. Sorvino, Esq.
    WHITE AND WILLIAMS LLP